2001-NMCA-086

34 P.3d 1157

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Robert Licon BARRAGAN,
Defendant–Appellant.**

No. 21,846.

Court of Appeals of New Mexico.

Sept. 17, 2001.

Patricia A. Madrid, Attorney General, Katherine Zinn, Ass't Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Ass't Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant appeals from the judgment entered after a jury found him guilty of aggravated burglary, possession of burglary tools, larceny over $100, and concealing identity. Defendant asserts five grounds for reversal: (1) the trial court erred in denying Defendant's motion to suppress evidence

seized pursuant to a protective search; (2) the jury instructions directed the jury to find that the market value of the items taken by Defendant was greater than $100; (3) the trial court erred in denying Defendant's motion for a directed verdict on the charge of possession of burglary tools and the aggravated portion of the charge of aggravated burglary; (4) the trial court abused its discretion in denying Defendant's motion for a mistrial; and (5) the trial court abused its discretion in allowing the State to reopen its case to introduce an in-court identification of Defendant. We hold that the officer who searched Defendant exceeded the scope of a protective search when he emptied Defendant's pockets after ascertaining that the item causing the bulge in Defendant's pants was not a weapon. For this reason, we reverse three of Defendant's convictions and remand for a new trial. We affirm Defendant's conviction for concealing his identity. Because we reverse Defendant's conviction for larceny based on the erroneous admission of evidence, it is unnecessary for us to reach Defendant's challenge to the jury instructions.

## FACTS

{2} At approximately 2:20 a.m. on February 3, 1999, police officers responded to a report of a possible burglary at a commercial building in Las Cruces. The building houses two businesses separated by an eight-foot "dummy wall" that leaves a small gap between the top of the wall and the ceiling of the building. An automobile repair shop occupies the south side of the building, and an automobile parts store is located on the north side. The repair shop portion of the building also includes a separately secured, freestanding interior office. The burglar entered through an air conditioning vent above the office.

{3} When the police arrived at the business, they found a bay door to the repair shop partially open. The officers searched the repair shop and the parts store, but found no one inside. They did, however, find a stack of tools in a pile just inside the bay door as well as a small flashlight, which had been left on.

{4} After the officers had secured the interiors of the two businesses, the officers moved their search outside. Officer Syling, a K–9 officer, began a "wind scent" search with his dog, wherein the officer and dog position themselves downwind from an area such that the dog may detect the scent of persons upwind. After leaving the bay door, the dog alerted almost immediately. The dog lost the trail, but soon picked up a scent and alerted more strongly. Shortly after the dog alerted the second time, Officer Syling saw Defendant walk around the corner of a nearby building and notified other officers to stop and question Defendant.

{5} Officer Monget responded to Officer Syling's request. As he approached Defendant in his patrol car, Officer Monget saw that another officer had already stopped beside Defendant. As he got out of his car, Officer Monget heard the other officer ordering Defendant to stop, and Officer Monget began issuing verbal orders to stop. Officer Monget drew his gun, pointed it at Defendant, and ordered Defendant to get down on the ground. Defendant complied with Officer Monget's orders, and Officer Monget handcuffed Defendant.

{6} Officer Monget then stood Defendant up and began a protective search to ascertain whether Defendant was armed. Officer Monget testified that he felt hard objects in Defendant's pockets. The officer pulled out a hard plastic device four-to-five inches long, which one of the victims later identified as a dog training tool. At trial, Officer Monget testified that after feeling the device, he was unsure whether it was a weapon. After removing the dog training device, Officer Monget emptied Defendant's pockets, recovering two watches, some loose change, several video game tokens, a bandana, and a comb. The change, tokens, and watches were later identified as belonging to one of the victims.

{7} After the search, Officer Monget took Defendant back to the scene of the burglary to compare the soles of Defendant's shoes to footprints found near the air conditioning vent through which the burglar had entered the building. The prints appeared to match. The officers showed the items seized from Defendant to one of the business owners, who identified the objects as having been in the locked office within the repair shop. The owner later testified that the office door had

been pried open during the burglary, and that, after entering the office, the burglar appeared to have used a pry bar to open a locked cabinet.

{8} While taking pictures of the scene, the officers discovered a jacket in the air conditioning vent. After the jacket had been photographed, the officers removed it from the vent. They found a knife underneath the jacket. Neither the knife nor the jacket belonged to the owners of the two businesses.

{9} Prior to trial, Defendant moved to suppress the items seized during the pat-down search. The trial court denied Defendant's motion, and the case was heard by a jury. The jury found Defendant guilty of aggravated burglary, possession of burglary tools, larceny over $100, and concealing identity. This appeal followed.

## DISCUSSION

### I. Motion to Suppress

{10} Typically, in reviewing a trial court's denial of a motion to suppress, we determine whether the law was correctly applied to the facts, giving due deference to the factual findings of the lower court. *State v. Duquette*, 2000–NMCA–006, ¶ 7, 128 N.M. 530, 994 P.2d 776. We review de novo the trial court's application of the law to the facts. *State v. Paul T.*, 1999–NMSC–037, ¶ 8, 128 N.M. 360, 993 P.2d 74.

{11} Defendant challenges the trial court's denial of his motion to suppress on three grounds: (1) the officers lacked reasonable suspicion to stop Defendant; (2) by drawing their weapons, ordering Defendant to lie down on the ground, and then placing Defendant in handcuffs, the officers used excessive force to detain Defendant; and (3) the full search of Defendant's pockets exceeded the permissible bounds of an investigative detention. The State argues that the search was proper in all respects, but offers the inevitable discovery doctrine as an alternative justification for admitting the evidence should we decide that the search was improper. We conclude that the officers had reasonable suspicion to stop Defendant, but that the search of Defendant's pockets exceeded the scope of a pat-down search for weapons. We hold that the record is insufficient for us to evaluate the State's claim that the evidence is admissible under the inevitable discovery doctrine.

{12} "In appropriate circumstances and in an appropriate manner a police officer may approach a person for purposes of investigating possible criminal behavior, even though there is no probable cause to make an arrest." *State v. Watley*, 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct.App.1989) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An investigatory stop must be supported by a particularized suspicion, based on the totality of the circumstances known to the officer, that the particular individual being stopped is engaged in wrongdoing or was involved in a completed felony. *Id.* at 624, 788 P.2d at 380. In this case, Defendant was walking in the vicinity of a recent burglary at a late hour in a deserted neighborhood. The police dog alerted to a smell immediately upon leaving the garage, and, although the dog lost the scent for a brief period of time, he quickly regained it and led Officer Syling to where Defendant was walking. It appeared to the officer that Defendant emerged suddenly, as if he had previously been hiding. Officer Syling and other officers noted that although it was cold outside, Defendant was wearing a tank top and blue jeans. Under these circumstances, we conclude that the officers had reasonable suspicion to believe that Defendant may have been involved in the recent burglary. *See id.* (holding that officers had reasonable suspicion to stop suspect seen driving late at night only a short distance from the area in which a crime had been committed).

{13} Upon approaching Defendant, the officers ordered him to stop. Defendant did not respond immediately. Officer Monget then drew his gun, ordered Defendant to lie down on the ground, and, when Defendant complied, handcuffed Defendant before standing him up to conduct a protective search. Defendant argues that the force used by Officer Monget was excessive under the circumstances. We disagree. "Where there is reason for the officers to fear for their safety, they may unholster their guns and use reasonable force in effectuating the stop without such action automatically constituting an arrest." *State v. Lovato*, 112 N.M.

517, 522, 817 P.2d 251, 256 (Ct.App.1991). Officer Monget was investigating a burglary, an inherently dangerous crime for which officers may assume that a suspect is likely to be armed. *See State v. Cobbs,* 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct.App.1985) (holding that the police have an automatic right to conduct a protective search of a burglary suspect because burglary is a crime for which an offender would likely be armed). Although there were several officers on the scene at the time that Officer Monget stopped Defendant, Defendant's hesitance in complying with the officers' earlier orders, his furtive behavior, and the inherently dangerous nature of the crime for which he was suspected justified Officer Monget in drawing his weapon and securing Defendant's hands until the officer could determine whether Defendant was in fact armed. *See, e.g., State v. Jimmy R.,* 1997–NMCA–107, ¶ 4, 124 N.M. 45, 946 P.2d 648. We reject Defendant's contention that police officers may not draw weapons during an investigatory stop unless the officers know in advance that the crimes for which they suspect an individual involved the use of a firearm or the officers are outnumbered by the suspects. Such a rule is not only untenable, but is unsupported by the cases cited by Defendant and will not be considered by this Court. *See State v. Chandler,* 119 N.M. 727, 733, 895 P.2d 249, 255 (Ct.App.1995) (stating that appellate court will not consider argument unsupported by precedent).

**{14}** Having concluded that Officer Syling was justified in conducting a protective search of Defendant, we now turn to the question of whether, in emptying Defendant's pockets, Officer Syling exceeded the scope of a protective search. During an investigatory stop, a protective search must be limited to that which is necessary to discover weapons that may be used to harm the officers or others nearby. *See Paul T.,* 1999–NMSC–037, ¶ 17, 128 N.M. 360, 993 P.2d 74. An officer may not only pat the outer clothing of a suspect, but may also remove a hard object if by touch the officer remains uncertain as to whether the object might be a weapon. *See id.* ¶ 18, 993 P.2d 74.

**{15}** Officer Monget testified that he felt several hard objects during his pat down of Defendant. The officer further testified that, after feeling a hard object approximately four to five inches long, he remained uncertain whether the object was a weapon. After removing the object, the officer ascertained that it was an ultrasonic pet training device. The officer then emptied Defendant's pockets, recovering loose change, tokens, two watches, a comb, and a bandana. No evidence was introduced at either the suppression hearing or at trial to indicate that Officer Monget suspected that any of these objects might be weapons. Without such testimony, we conclude that although Officer Monget was justified in removing the pet training device, he exceeded the scope of a protective search when he removed the remaining items. *See id.* ¶ 23, 993 P.2d 74 (quoting *People v. Collins,* 1 Cal.3d 658, 83 Cal.Rptr. 179, 463 P.2d 403, 406 (1970)) (" '[A]n officer who exceeds a pat-down without first discovering an object which feels reasonably like a knife, gun, or club must be able to point to specific and articulable facts which would reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down.' "). The rule allowing an officer to remove an object suspected to be a weapon does not give the officer carte blanche to empty a suspect's pockets. Under the circumstances of this case, where the officer did not state any reasons for believing the coins or watches might be weapons, and the officer removed a bandana, which was clearly not a weapon, we conclude that Officer Monget's actions exceeded the scope of the permissible search.

**{16}** The State argues that even if we hold that removing the coins, tokens, and watches exceeded the scope of the protective search, we should nonetheless uphold the trial court's denial of the motion to suppress on the ground that the evidence would have inevitably been discovered during an inventory search following Defendant's arrest. The State concedes that this argument was not made below, but argues that we should apply the "right for any reason" rule to uphold the trial court's denial of Defendant's motion to suppress.

{17} Although we may affirm a trial court's ruling on a ground not relied upon by the court or argued by the parties, we will not do so if reliance on the new ground would be unfair to the appellant, in this case Defendant. *See State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994). "In particular, it would be unfair to an appellant to affirm on a fact-dependent ground not raised below." *Id.* Because application of the inevitable discovery doctrine requires a trial court to make factual determinations, we will not uphold the trial court's ruling on that ground.

{18} The inevitable discovery doctrine is an exception to the exclusionary rule that permits the admission of unlawfully seized evidence if that evidence would have been seized independently and lawfully in due course. *State v. Johnson,* 1996–NMCA–117, ¶ 19, 122 N.M. 713, 930 P.2d 1165; *State v. Corneau,* 109 N.M. 81, 90, 781 P.2d 1159, 1168 (Ct.App.1989). In order for the inevitable discovery doctrine to apply, the lawful means by which the evidence could have been attained must be wholly independent of the illegal search. *See State v. Wagoner,* 2001–NMCA–014, ¶ 13, 130 N.M. 274, 24 P.3d 306. The State argues that the officers had probable cause to arrest Defendant, and therefore the evidence would inevitably have been seized during an inventory search following the arrest. In order for a trial court to find in favor of the State, the court would be required to make at least three factual findings: (1) whether, without the illegally seized evidence, the officers had probable cause to arrest Defendant; (2) whether the officers would in fact have made the arrest under such circumstances; and (3) whether an inventory that would have revealed the items was standard procedure. *See, e.g., State v. Romero,* 2001–NMCA–046, ¶¶ 11–17, 130 N.M. 579, 28 P.3d 1120 [No. 21,078 (N.M.Ct.App. May 30, 2001) ] (upholding trial court's findings that officers would have arrested the defendant even if the officers had not discovered cocaine during an illegal search, that the officers had probable cause to do so, and that an inventory search would have occurred). Even if we were able to determine whether the officers in this case had probable cause to arrest Defendant without consideration of the illegally seized evidence, there is no evidence that the officers would have arrested Defendant under these circumstances and no evidence regarding a standard inventory procedure. For this reason, we will not consider the inevitable discovery doctrine as an alternative ground for upholding the trial court's decision. *See Franks,* 119 N.M. at 177, 889 P.2d at 212 (refusing to uphold trial court's decision on fact-dependent ground not raised below).

{19} Finally, the State argues that the admission of the coins, tokens, and watches, even if erroneous, was harmless insofar as the evidence was cumulative. We disagree. For error to be considered harmless, there must be: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so minuscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony. *Sanchez v. State,* 103 N.M. 25, 27, 702 P.2d 345, 347 (1985). In this case, we agree with the State that substantial evidence supported Defendant's conviction without reference to the improperly admitted evidence. The evidence showed that Defendant was the only person found near the scene of the burglary. Despite the fact that it was early in the morning and cold outside, Defendant was wearing only a tank top and jeans. A jacket was found inside the air conditioning vent through which the burglar gained access to the building. The burglarized repair shop was dirty and oily, and the police noted that Defendant's clothing and hands were covered in dirt and oil. In addition, Defendant was found in possession of a pet training device which was identical to a device missing from the office of the repair shop. The soles of Defendant's shoes appeared to match the footprints found inside the building. Finally, when asked for identification, Defendant initially gave a false name, indicating consciousness of guilt.

{20} Nonetheless, we conclude that the volume of permissible evidence was not so disproportionate to the amount of improper evidence that the erroneously admitted evi-

dence could not have contributed to the conviction. *See, e.g., Clark v. State,* 112 N.M. 485, 487, 816 P.2d 1107, 1109 (1991) ("Error in the admission of evidence in a criminal trial must be declared prejudicial and not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction."). When asked what he was doing walking late at night, Defendant told the police that he was headed home from a friend's house, nearly six miles away. The fact that Defendant warmed himself up walking so far could have explained why Defendant was not wearing a jacket. A jury member asked whether the oil on Defendant's hands could have come from the parking lot in which Defendant was ordered to lie down by police. In addition, although the soles of Defendant's shoes appeared to match the footprints left at the scene of the burglary, there was no evidence that Defendant's shoes were unique or that the match was perfect. Finally, the owner of the repair shop testified that he had recently purchased the pet training device and that the device had no distinguishing marks or characteristics by which the owner could definitively identify the device as belonging to him. The erroneously admitted evidence substantially corroborates the State's theory that the device did in fact belong to the business and substantially confirms that Defendant was inside the building. In addition, we think it significant that the prosecutor in closing argument made several references to the watches and coins as important evidence for conviction, inferring that this evidence might tip the scale of doubt and even describing the evidence as additional pieces of a puzzle which when taken together showed a picture that demonstrated guilt beyond a reasonable doubt. For these reasons, we reject the State's argument that the error was harmless.

{21} In conclusion, we hold that Officer Monget exceeded the scope of a permissible protective search when he continued to remove items from Defendant's pockets after ascertaining that the pet training device was not a weapon and in the absence of any particularized suspicion that the remaining items were themselves weapons. Because Defendant's convictions for aggravated burglary, possession of burglary tools, and larce-

ny were based in part on the admission of this evidence, we reverse these convictions and remand for a new trial.

## II. Sufficiency of the Evidence

{22} Defendant claims that the trial court erred by denying his motion for a directed verdict with respect to the charge of possession of burglary tools, contrary to NMSA 1978, § 30–16–5 (1963), and the aggravated portion of the charge of aggravated burglary, contrary to NMSA 1978, § 30–16–4(A) (1963). We review the trial court's denial of a motion for a directed verdict to determine whether substantial evidence supports the charge. *State v. Dominguez,* 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993). Although we reverse Defendant's convictions and remand for a new trial based on the erroneously admitted evidence, we review Defendant's sufficiency of the evidence claims because the principles of double jeopardy would bar retrial if Defendant's convictions are not supported by substantial evidence. *See State v. Sanchez,* 2000–NMSC–021, ¶ 30, 129 N.M. 284, 6 P.3d 486; *State v. Post,* 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App.1989).

### A. Possession of Burglary Tools

{23} Defendant challenges the sufficiency of the evidence underlying his conviction for possession of burglary tools on the grounds that there was no evidence that he used any tools to enter the building through the air conditioning vent, the evidence showed that at least one of the tools (a flashlight) belonged to the owner of the repair shop, and, by the time that the evidence shows that Defendant used the tools, the crime of burglary was complete. The State counters that evidence that Defendant pried open the door to an office inside the repair shop is sufficient to sustain the conviction because (1) for the purposes of the possession statute, burglary is a continuing offense or (2) the entry into the office was itself a burglary. It is unnecessary for us to consider whether burglary is an ongoing offense because the evidence in this case shows that Defendant possessed a burglary tool for the purpose of committing a burglary.

{24} Although framed as a challenge to the sufficiency of evidence, Defendant's argument requires us to engage in statutory interpretation to determine whether the facts of this case, when viewed in the light most favorable to the verdict, are legally sufficient to sustain a conviction for possession of burglary tools. Issues of statutory construction and interpretation are questions of law and are reviewed de novo. *See State v. Herbstman,* 1999–NMCA–014, ¶ 16, 126 N.M. 683, 974 P.2d 177; *State v. Adam M.,* 1998–NMCA–014, ¶ 15, 124 N.M. 505, 953 P.2d 40.

{25} As a preliminary note, Defendant urges us not to consider the State's argument that Defendant's use of a tool to gain entry into the office constituted a burglary because this argument was not made below. The State was not required to present every possible scenario under which Defendant might be found guilty of possession. *Cf. State v. Crews,* 110 N.M. 723, 736, 799 P.2d 592, 605 (Ct.App.1989) (holding that variation between an indictment and proof to a jury is not material where the allegations and proof substantially correspond). In this case, Defendant was charged with, and the jury was properly instructed as to, the elements of possession of burglary tools in general terms, and it was up to the jury in the first instance to determine whether the evidence presented was sufficient to find Defendant's guilt beyond a reasonable doubt. *See State v. Orgain,* 115 N.M. 123, 126, 847 P.2d 1377, 1380 (Ct.App.1993) (noting that appellate review of sufficiency of the evidence involves two-step process: (1) deference to fact-finder's resolution of factual conflicts and inferences derived therefrom and (2) a legal determination of whether evidence viewed in this manner could support verdict). Furthermore, given the particular facts of this case, we believe that Defendant was on notice of the State's argument insofar as the State's contention that burglary is a continuing offense put Defendant on notice of the need to defend against the evidence of Defendant's forced entry into the office. *Cf. Crews,* 110 N.M. at 736, 799 P.2d at 605; *State v. Mills,* 94 N.M. 17, 20, 606 P.2d 1111, 1114 (Ct.App.1980) (rejecting argument that discrepancy between opening remarks by prosecutor as to what evidence would show

and the evidence actually introduced was prejudicial to the defendant).

{26} The offense of possession of burglary tools consists of "having in the person's possession a device or instrumentality designed or commonly used for the commission of burglary and under circumstances evincing an intent to use the same in the commission of burglary." Section 30–16–5. Burglary is defined as "the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein." NMSA 1978, § 30–16–3 (1971).

{27} In New Mexico, "a separately secured area of a building otherwise open to the public is a 'structure' within the meaning of the burglary statute." *State v. Gregory,* 117 N.M. 104, 104–05, 869 P.2d 292, 292–93 (Ct.App.1993); *see also State v. Sanchez,* 105 N.M. 619, 621–22, 735 P.2d 536, 538–39 (Ct.App.1987); *State v. Harris,* 101 N.M. 12, 19, 677 P.2d 625, 632 (Ct.App.1984); *State v. Ortega,* 86 N.M. 350, 351, 524 P.2d 522, 523 (Ct.App.1974). Although it is true that, at the time of the burglary, the repair shop was not open to the public, it is also true that the possession of burglary tools statute does not require that a defendant be convicted of burglary to be held liable for possession. *See State v. Everitt,* 80 N.M. 41, 47, 450 P.2d 927, 933 (Ct.App.1969) (holding that possession of burglary tools is an offense separate from burglary). Instead, the evidence must only show that a defendant have "an intent to use the instrumentality or device in committing burglary." *State v. Najera,* 89 N.M. 522, 523, 554 P.2d 983, 984 (Ct.App.1976); *see also* UJI 14–1633 NMRA 2001 (listing as an element of the offense that the defendant possessed a tool or device with the intent that the tool or device "be used for the purpose of committing a burglary"). As such, the critical question is not whether Defendant could be charged with two counts of burglary for the initial entry through the air conditioning vent and the entry into the locked office, but whether the use of a pry device to gain entry into the office evinces an intent to use the pry device in the commission of a burglary. *See* § 30–16–5. The evidence shows that Defendant pried open

the office door, and, once inside, committed a larceny. This is sufficient to support a finding that Defendant intended to use the pry device to make an unauthorized entry of a structure with the intent to commit a felony therein. *See* § 30–16–3 (defining crime of burglary). We do not discuss the flashlight because possession of the pry device was sufficient to sustain the conviction, and we are remanding the entire charge for a new trial. On remand it will be up to the trial court to determine what theories should be submitted to the jury based on the evidence presented.

### B. Aggravated Burglary

{28} Defendant challenges his conviction for aggravated burglary on the ground that the jury's finding that the knife found under Defendant's jacket in the air conditioner shaft required the jury to make an impermissible inference. We disagree.

{29} In analyzing a claim of insufficient evidence, we ask whether there is substantial evidence of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of the crime charged. *State v. Apodaca*, 118 N.M. 762, 765–66, 887 P.2d 756, 759–60 (1994). We view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of allowing the charge to be determined by the jury. *See Dominguez*, 115 N.M. at 455, 853 P.2d at 157. An inference is permissible "if the evidence necessary to invoke the inference (the evidence as a whole, *including the basic fact or facts*) is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt." *State v. Matamoros*, 89 N.M. 125, 128, 547 P.2d 1167, 1170 (Ct.App. 1976).

{30} Viewed in the light most favorable to the verdict, the evidence shows that the burglar entered the building through the air conditioning duct. A jacket was discovered at the bottom of the duct, and the knife was lying directly under the jacket. The owner of the repair shop testified that he had no idea how or why a jacket and a knife would be in the duct. From this evidence, a jury could properly infer that the jacket and the knife belonged to the burglar.

{31} The evidence shows that there was dirt and oil on the floor of the repair shop and that the bay door had been opened slightly to allow the burglar to remove the items stacked near the door. When the police questioned Defendant near the scene of the burglary, they noticed that his clothes and hands were oily and dirty. Property taken from the repair shop was recovered from Defendant's person, and the soles of Defendant's shoes matched the shoe prints found near the air conditioning duct through which the burglar entered the building. In addition, Defendant was dressed only in a tank top and jeans despite the fact that it was cold outside. Based on this evidence, a jury could properly infer that Defendant was the person who burglarized the building, and that the jacket and knife found in the vent therefore belonged to Defendant. *See id.* at 128, 547 P.2d at 1170.

### III. Concealing Identity

{32} Because the erroneous admission of the evidence seized during the illegal search of Defendant could not have contributed to Defendant's conviction for concealing his identity, we must consider Defendant's remaining two challenges in light of this conviction.

### A. Motion for Mistrial

{33} We review the denial of a motion for a mistrial under an abuse of discretion standard. *State v. Gonzales*, 2000–NMSC–028, ¶ 35, 129 N.M. 556, 11 P.3d 131. A trial court abuses its discretion when its ruling is clearly against the logic and effect of the facts and circumstances of a case. *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995). We cannot say the trial court abused its discretion unless its ruling is clearly untenable or not justified by reason. *Id.*

{34} Defendant complains that the trial court abused its discretion by denying his motion for a mistrial after a witness unexpectedly testified that Defendant had decided to reveal his true identity after having concealed it from the police because "once he went to the detention center, that the correctional officers there would recognize him and they would know his identity[.]"

The record indicates, and Defendant concedes, that this testimony was unsolicited by the State insofar as the testimony was significantly different from the witness's original statement in a police report, in which the witness wrote that Defendant said, "I'm going to tell you who I am because you're gonna find out anyway." After sustaining Defendant's objection but denying his motion for a mistrial, the trial court instructed the jury to disregard the testimony.

{35} Our cases distinguish between inadvertent remarks made by a witness and similar testimony intentionally solicited by the prosecution. *Gonzales*, 2000–NMSC–028, ¶ 39, 129 N.M. 556, 11 P.3d 131. When a witness offers unsolicited testimony not previously disclosed, the general rule is that the prompt sustaining of an objection and a curative instruction to the jury to disregard the testimony cures any prejudicial effect of inadmissible testimony. *See id.* ¶ 37, 11 P.3d 131; *State v. Simonson*, 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983) ("The overwhelming New Mexico case law states that the prompt sustaining of the objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony."). Applying this rule to the case at bar, we conclude that the trial court did not abuse its discretion in denying Defendant's motion for a mistrial.

### B. Motion to Reopen Case

{36} At the close of the State's case in chief, Defendant moved for a directed verdict on the ground that the State had failed to provide an in-court identification of Defendant. The State conceded its error and requested that it be permitted to reopen its case for the sole purpose of securing the identification. Over Defendant's objection, the court granted the State's request. Defendant argues that the court abused its discretion. We disagree.

{37} We review the trial court's ruling on a motion to reopen a case after the close of evidence for an abuse of discretion. *State v. Harrison*, 2000–NMSC–022, ¶ 56, 129 N.M. 328, 7 P.3d 478. We consider the trial court's ruling in light of the extent to which the State used due diligence to obtain the testimony and the probable value of the testimony. *Id.* In the case at bar, the trial court noted that various witnesses had already referred to Defendant as the person who the police stopped and subsequently arrested as the suspect on the night of the burglary. The State used due diligence to secure the attendance of these witnesses, but neglected to solicit the testimony it thought was necessary. By allowing the State to reopen for the limited purpose of securing an in-court identification of Defendant, the court did nothing more than insist that all facts be presented that would insure a fair trial. *See State v. Crump*, 97 N.M. 177, 179, 637 P.2d 1232, 1234 (1981). Under these circumstances, we cannot say that the trial court abused its discretion.

### CONCLUSION

{38} For the foregoing reasons, we reverse Defendant's convictions for aggravated burglary, larceny, and possession of burglary tools and remand for a new trial. We affirm Defendant's conviction for concealing his identity.

{39} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge and JONATHAN B. SUTIN, Judge.