This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                     **NO. 33,837**

**CAESAR ORTIZ-CASTILLO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**James M. Hudson, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}    Defendant, Caesar Ortiz-Castillo, appeals his convictions for the crimes of trafficking controlled substances, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006) and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). Defendant raises three issues on appeal, two of which we address in this memorandum opinion.[1] First, Defendant argues that the district court's denial of his motion to suppress evidence was in error. Second, Defendant argues that the presentation of improper character evidence to the jury required a mistrial.

{2}    With respect to Defendant's motion to suppress, the record before this Court indicates that Defendant was not illegally searched or seized under state or federal law. With respect to Defendant's argument that a mistrial should have been granted, we conclude that curative instructions mitigated any prejudice to Defendant.

**BACKGROUND**

{3}    On the morning of March 20, 2013, members of the Chaves County Metro Narcotics Task Force secured a search warrant for a mobile home located at 13 Partial Road in Chaves County, New Mexico. Officers observed the mobile home throughout the day and executed the search warrant at approximately 6:00 p.m. While executing

---

[1]The third issue is the subject of a separate opinion issued by this Court on February 3, 2016. *State v. Ortiz-Castillo*, 2016-NMCA-___, ___ P.3d ___ (No. 33,837, Feb. 3, 2016).

the warrant at 13 Partial Road, the task force members received information related to drug activity and the alleged presence of methamphetamine at the adjacent mobile home. The address of that mobile home was 11 Partial Road. While one officer left the scene to obtain a search warrant for 11 Partial Road, several of the remaining task force officers secured the premises at 11 Partial Road in anticipation of the arrival of a search warrant.

{4} Sergeant Filomeno Gonzales and Officer John Clay, along with other officers, were standing outside near the mobile home awaiting the search warrant. At approximately 9:30 p.m., Defendant arrived at 11 Partial Road as a passenger in a vehicle driven by Jeffrey Keaton. The vehicle pulled into the driveway and parked. As the vehicle sat in the driveway, Sergeant Gonzales and Officer Clay decided to approach the vehicle. The officers simultaneously approached with Officer Clay going to the driver's side door and Sergeant Gonzales going to the passenger's side door. Sergeant Gonzales was wearing a green SWAT uniform with his badge displayed on his chest. Officer Clay was wearing a vest marked "police" and a metal badge. Neither officer unholstered his weapon. Sergeant Gonzales opened the passenger's side door and identified himself by saying "police." He did not otherwise speak to Defendant or ask for identification.

**{5}** While Officer Clay was talking with Keaton, Sergeant Gonzales observed Defendant clenching an unknown item in his hands. Defendant suddenly pulled his clenched hands in toward his waist. In response, Sergeant Gonzales grabbed Defendant by the wrists and pulled him from the vehicle.

**{6}** After removing Defendant from the vehicle, Sergeant Gonzales conducted a pat-down search for weapons. During the pat-down, Sergeant Gonzales felt an item that he knew to be a methamphetamine pipe in the front pocket of Defendant's pants. Sergeant Gonzales asked Defendant if the item was a pipe and Defendant acknowledged that it was. Sergeant Gonzales placed Defendant under arrest for possession of drug paraphernalia.

**{7}** Following Defendant's arrest, Sergeant Gonzales fully searched Defendant's person and located a black, zippered case. Sergeant Gonzales opened the case and saw various items including several small plastic bags containing suspected methamphetamine and an undetermined quantity of marijuana.

**{8}** Defendant was charged with trafficking controlled substances and possession of drug paraphernalia. Defendant was convicted on both charges. This appeal resulted.

**ILLEGAL SEARCH AND SEIZURE**

**Standard of Review**

**{9}** A trial court's denial of a motion to suppress evidence presents a mixed question of law and fact. *State v. Gutierrez*, 2008-NMCA-015, ¶ 4, 143 N.M. 522, 177 P.3d 1096. The factual findings of the court are viewed in a manner that is "most favorable to the prevailing party, as long as the facts are supported by substantial evidence." *State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19. We review the application of the law to those facts de novo. *Gutierrez*, 2008-NMCA-015, ¶ 4.

**Defendant's Arguments**

**{10}** Defendant's claim that the district court erred in denying his motion to suppress is presented on appeal sequentially. First, Defendant argues that, because Sergeant Gonzales did not have reasonable suspicion that Defendant (1) had committed a crime, or (2) posed a threat to officer safety, the encounter between Defendant and Sergeant Gonzales prior to Defendant's forced removal from the vehicle constituted an illegal seizure. Defendant additionally argues that after he was removed from the vehicle, the pat-down search conducted by Sergeant Gonzales was constitutionally impermissible. We discuss each argument in turn.

**The Encounter Prior to Defendant's Removal From the Vehicle**

**{11}** Both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution guarantee the right to be free from

unreasonable searches and seizures. U.S. Const. amend. IV; N.M. Const. art. II, § 10. However, "[n]ot all police-citizen encounters are seizures subject to [constitutional protections]." *State v. Williams*, 2006-NMCA-062, ¶ 9, 139 N.M. 578, 136 P.3d 579. "An officer may approach a person to ask questions . . . without any basis for suspecting that particular individual, as long as the police do not convey a message that compliance with their requests is required." *Id.* ¶ 11 (internal quotation marks and citation omitted). When an officer indicates, through words or actions, that the individual is not free to leave, a consensual encounter transforms into a seizure under the Fourth Amendment. *Gutierrez,* 2008-NMCA-015, ¶ 9. Our Supreme Court has noted circumstances supporting an assertion of a seizure, including (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) physical touching of the individual, and (4) the use of language or tone by an officer that indicates that compliance with a request might be compelled. *State v. Jason L.*, 2000-NMSC-018, ¶ 16, 129 N.M. 119, 2 P.3d 856.

{12}     Defendant's sole argument on appeal appears to be that, because the officers lacked reasonable suspicion that the occupants of the vehicle had committed any crime or posed a threat to officer safety, any contact by the officers present was constitutionally impermissible. This argument is fatally incomplete.[2]

---

[2]Ambiguity in the district court's findings of fact as to the substance and timeline of the encounter between the vehicle occupants and law enforcement officers

6

{13}     The vehicle pulled into 11 Partial Road at approximately 9:30 p.m. Several officers, including Sergeant Gonzales and Officer Clay were standing around waiting for a search warrant. Sergeant Gonzales and Officer Clay decided to approach the vehicle. After the vehicle doors were opened, Sergeant Gonzales identified himself as "police" and simply observed Defendant while Officer Clay interacted with Keaton.

{14}     While sitting in the vehicle with Sergeant Gonzales standing at the open door, Defendant suddenly pulled his clutched hands in toward his waist. This unexpected movement was, under the circumstances, sufficient to trigger safety concerns on the part of Sergeant Gonzales and to justify a pat-down search for weapons. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety

raises potential questions for this Court, particularly as to the possibility that the officers' specific conduct affected an illegal seizure of both Keaton and Defendant prior to Defendant's removal from the vehicle. *See, e.g.*, *State v. Murry*, 2014-NMCA-021, ¶¶ 25-28, 318 P.3d 180; *Williams*, 2006-NMCA-062, ¶¶ 14, 16-17. Because Defendant does not develop this argument on appeal, we do not address it. *See State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶ 10, 144 N.M. 222, 185 P.3d 1072 ("We do not address arguments not raised on appeal.").

7

or that of others was in danger."); *State v. Boblick*, 2004-NMCA-078, ¶ 12, 135 N.M. 754, 93 P.3d 775 ("[O]fficer safety concerns can arise from a variety of fact patterns other than the obvious situation of a 'characteristic bulge' that appears to be a weapon concealed in a suspect's clothing."); *In re Jason L.*, 1999-NMCA-095, ¶¶ 16, 18, 127 N.M. 642, 985 P.2d 1222 (discussing that hand movements and "a sudden reach toward the waistband" justified a concern for officer safety), *rev'd by Jason L.*, 2000-NMSC-018. Following Defendant's sudden movement with his hands toward his waist, Sergeant Gonzales grabbed his wrists and removed Defendant from the vehicle.

{15}    Given the factual findings entered by the district court, we cannot say as a matter of law that Defendant was seized prior to the point when Sergeant Gonzales removed Defendant from the vehicle. The interaction between Sergeant Gonzales and Defendant did not implicate any of the factors outlined in *Jason L. See* 2000-NMSC-018, ¶ 16 ("Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (internal quotation marks and citation omitted)). The number of officers was equal to the number of vehicle occupants, and only Sergeant Gonzales interacted in any way with Defendant. Sergeant Gonzales neither drew his weapon nor made any physical contact

8

with Defendant. In fact, Sergeant Gonzales did not communicate in any way with Defendant except to identify himself as a law enforcement officer. There are no facts leading to a conclusion that Sergeant Gonzales indicated in any way that Defendant was not free to leave. *See State v. Lopez*, 1989-NMCA-030, ¶ 4, 109 N.M. 169, 783 P.2d 479 ("[A]s a matter of law, a person is seized when the facts show accosting and restraint such that a reasonable person would believe he is not free to leave.").

**{16}** We conclude that, prior to Defendant's sudden movement that triggered his removal from the vehicle, the encounter between Defendant and Sergeant Gonzales was consensual and, therefore, not subject to scrutiny under the United States or New Mexico Constitutions.

**The Encounter After Defendant's Removal From the Vehicle**

**{17}** After removing Defendant from the vehicle, Sergeant Gonzales performed a cursory pat-down for weapons. As discussed above, this seizure and pat-down was justified by reasonable concerns for officer safety given Defendant's sudden and unexpected movement with his hands toward his waist. *See Terry*, 392 U.S. at 27. Defendant's front pocket was full to the point that it was bulging. During the pat-down, Sergeant Gonzales felt an item that, based on his training and experience, he knew to be a narcotics pipe. *See State v. Johnson*, 2010-NMCA-045, ¶ 24, 148 N.M. 237, 233 P.3d 371 ("[I]f, while conducting a *Terry* pat[-]down for a weapon, an

9

officer feels an object and the officer is able to articulate reasons why it was immediately apparent to the officer at first feel, without further exploration or manipulation, that the object was contraband, his seizure of the contraband will be justified."). After feeling the pipe, Sergeant Gonzales asked Defendant whether the item was a pipe and the Defendant replied that it was.

{18}     Defendant offers *State v. Barragan* for the proposition that officers may not seize objects during pat-down searches that are not weapons or suspected weapons. 2001-NMCA-086, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. In *Barragan*, an officer was conducting a pat-down search and felt a hard object that was approximately four inches long. 2001-NMCA-086, ¶ 15. The officer could not discern whether the object was a weapon, so he removed the object and discerned that it was an ultrasonic pet training device. *Id.* The officer then removed the remaining contents of the defendant's pockets including a comb, two watches, and a bandana. *Id.* The court held that, absent testimony indicating that the officer believed that any of the other items were a weapon, that removal of those items exceeded the scope of a weapons based pat-down. *Id.*

{19}     *Barragan* is clearly distinguishable from the present case. Sergeant Gonzales felt an item that he knew to be contraband. He asked Defendant whether the item was

10

contraband, and Defendant replied that it was. Sergeant Gonzales then placed Defendant under arrest and removed the item from Defendant's pocket.

**{20}** Defendant further argues that, once the pat-down established that Defendant was not in possession of any weapons, the search of Defendant should have been halted until a warrant was obtained. This is incorrect. At the conclusion of the pat-down, Defendant was under arrest for possession of drug paraphernalia. Any subsequent search of his person or belongings was allowable as a search incident to arrest. *See State v. Rowell*, 2008-NMSC-041, ¶ 13, 144 N.M. 371, 188 P.3d 95 ("One of the most firmly established exceptions to the warrant requirement is the right on the part of the government . . . to search the person of the accused when legally arrested." (internal quotation marks and citation omitted)). As such, Sergeant Gonzales's subsequent removal of additional items from Defendant's pockets and opening of the black, zippered case that contained narcotics were constitutionally permissible. Because Defendant was not subjected to an illegal search or seizure, we affirm the district court's denial of Defendant's motion to suppress.

**EVIDENCE OF OTHER CRIMES**

**Standard of Review**

**{21}** We review the denial of a motion for mistrial under an abuse of discretion standard. *State v. Gonzales*, 2000-NMSC-028, ¶ 35, 129 N.M. 556, 11 P.3d 131, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6.

**Prejudice**

**{22}** Rule 11-404(B) NMRA provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). Defendant claims that the prosecution's elicitation of testimony related to Defendant's uncharged criminal conduct caused prejudice by bolstering the idea that Defendant possessed drugs for the purpose of distribution rather than personal use.

**{23}** This Court's analyses in these circumstances hinge on whether the prosecution intentionally elicited the testimony, or whether the testimony was elicited inadvertently. *See Gonzales*, 2000-NMSC-028, ¶ 39 ("We have previously distinguished between inadvertent remarks made by a witness about a defendant's inadmissable prior crime or wrong and similar testimony intentionally elicited by the prosecutor."). When inadmissable testimony is intentionally elicited we "must

determine whether there is a reasonable probability that the improperly admitted evidence could have induced the jury's verdict." *Id.*

{24}     During direct examination of Sergeant Gonzales, the prosecution began a line of questioning directed at the admission of the black, zippered case found on Defendant's person during the search incident to arrest. *See* Rule 11-901 NMRA (discussing the requirements for identifying and authenticating an item of evidence). The line of questioning unfolded as follows:

Q:     I've marked for identification as State's Exhibit 2, do you recognize that item?

A:     Yes, sir.

Q:     And how do you recognize that item?

A:     That's the black vinyl zipper style case that I removed from [Defendant's] left front pocket.

Q:     And does that appear to be in the same condition it was when you removed it from his pocket?

A:     Yes, sir.

. . . .

Q:     And does there appear to be any other alterations or anything like that to it?

A:     The contents of it may be removed or packaged separately.

Q:     But the outside of it looks to be the same?

A: Yes, sir.

. . . .

Q: And are the contents of it changed at all from the time you saw it?

A: No, sir.

Q: Is there anything that was in the case when you pulled it out that isn't in there now?

A: The suspected methamphetamine. I think there was another baggie in there, a ziplock, or a sandwich type baggie, and some marijuana.

Defendant objected to the elicitation of testimony related to his possession of marijuana, an uncharged crime. Defendant requested a mistrial based on "the intentional introduction before this jury of uncharged criminal conduct." The district court denied a mistrial but instructed the jury that Defendant was not charged with any crime involving marijuana and that the jury should disregard Sergeant Gonzales's statement referring to marijuana.

{25} We are disinclined to conclude that the prosecutor's line of questioning constituted an intentional elicitation of inadmissable testimony. *See State v. Lucero*, 1999-NMCA-102, ¶ 33, 127 N.M. 672, 986 P.2d 468 (noting that the prosecutor's question did not directly imply that the defendant committed other uncharged crimes). The prosecutor's questioning was directed at the identification and authentication of the black, zippered case for the purpose of having it admitted into evidence. While the

prosecutor's questioning likely exceeded the scope necessary for admission under Rule 11-901, the question that elicited the inadmissable testimony could have been answered by stating "yes" or "yes, the drugs." These answers would have accomplished the prosecutor's goal of authenticating the case without exposing the jury to inadmissable testimony.

{26} "The overwhelming New Mexico case law states that the prompt sustaining of the objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony." *Gonzales*, 2000-NMSC-028, ¶ 37 (internal quotation marks and citation omitted). Because the testimony was inadvertent, we conclude that the limiting instruction minimized any prejudice to Defendant. The district court's denial of Defendant's motion for a mistrial, therefore, did not constitute an abuse of discretion.

**CONCLUSION**

{27} We affirm the district court's denials of Defendant's motion to suppress and motion for mistrial. Defendant's convictions are affirmed pending our opinion in *State v. Ortiz-Castillo*, 2016-NMCA-___, ___ P.3d ___ (No. 33,837, Feb. 3, 2016).

{28} **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

15

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**