2008-NMCA-015

177 P.3d 1096

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Adrian L. GUTIERREZ, Defendant–Appellant.**

**No. 26,454.**

Court of Appeals of New Mexico.

Nov. 26, 2007.

Certiorari Granted, No. 30,800, Jan. 16, 2008.

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} This case arises from an incident in which law enforcement officers stopped Defendant Adrian Gutierrez, a pedestrian, in the street. The officers displayed their badges, and one officer drew a gun and pointed it at him before asking him if he had any weapons. The search that followed revealed that Defendant was carrying a handgun. After the district court denied Defendant's motion to suppress the evidence discovered during that incident, he pleaded guilty to possession of a firearm by a felon, reserving the right to appeal the denial of his motion. We hold that the officers seized Defendant without reasonable suspicion and that the search that subsequently revealed the firearm was illegal. We therefore reverse and remand for further proceedings.

**BACKGROUND**

{2} In the early afternoon on November 18, 2004, two Pecos Valley Drug Task Force

agents saw Defendant walking down a street in a residential neighborhood. He was carrying a pair of pants folded neatly over his left arm. Agents David Edmondson and Preston Ballou were driving in an unmarked law enforcement vehicle at the time. As they passed, Defendant gave them a look of surprise and then moved from the street onto the sidewalk.

{3} We base our facts on Agent Edmondson's testimony, as Officer Ballou was unavailable to testify at the suppression hearing. The officers found Defendant's appearance and conduct to be unusual and decided to talk with him. Agent Edmondson, who was driving, turned the vehicle around and parked by the curb of the street ahead of where Defendant was walking. Agent Ballou got out of the car and displayed his badge. Agent Edmondson followed, displaying his badge as well. Defendant appeared to be nervous. According to Agent Edmonson, Defendant took one or more steps backward, and he lowered the arm upon which he was carrying the pair of pants so that it was close to his left hip. In response, Agent Ballou immediately drew his gun, pointed it at Defendant, and then asked whether he had any weapons. Defendant stated that he did and also admitted that he was a felon. Agent Edmondson then seized a gun from a holster on Defendant's left hip. According to the officers, the events leading up to the seizure took place within "a matter of seconds."

## STANDARD OF REVIEW

{4} Our "review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. In reaching our conclusion, we adopt an interpretation of the factual background that is "most favorable to the prevailing party, as long as the facts are supported by substantial evidence." *State v. Vandenberg,* 2003–NMSC–030, ¶ 18, 134 N.M. 566, 81 P.3d 19. Against such a factual backdrop, we evaluate de novo the reasonableness of the conduct of law enforcement officers, considering the totality of the circumstances. *Id.* ¶ 19, 134 N.M. 566, 81 P.3d 19.

## PRESERVATION

{5} The State devotes a significant portion of its appellate briefing to the contention that Defendant failed to preserve his argument challenging the denial of his motion to suppress. "In order to preserve an issue for appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *State v. Romero,* 2006–NMCA–045, ¶ 14, 139 N.M. 386, 133 P.3d 842 (alteration in original) (internal quotation marks and citation omitted), *cert. granted,* 2006–NMCERT–004, 139 N.M. 429, 134 P.3d 120. We have reviewed the record and the transcripts carefully and find no merit in the State's argument.

{6} On June 6, 2005, Defendant filed a motion seeking to suppress all of the evidence obtained during the course of his November 18, 2004 interaction with the officers. At an evidentiary hearing regarding the matter, Agent Edmondson testified about the sequence of events leading to the seizure of the gun and about the facts that aroused his suspicion. In response, Defendant took the position that he was impermissibly seized immediately after Agent Ballou drew his weapon. Defendant went on to challenge the basis for the seizure, which he characterized as an investigatory detention, arguing that the officers lacked reasonable suspicion to detain him. In making that argument, Defendant explicitly invoked both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The district court later denied the motion. Defendant then entered a guilty plea, expressly reserving the right to appeal the district court's ruling.

{7} On appeal, Defendant renews the argument that he advanced in the district court under the federal and state constitutions. He contends that the officers seized him when they displayed their badges and pulled a gun and that they lacked reasonable suspicion to detain him.

{8} Defendant took all of the necessary steps to preserve his argument for review on appeal. His motion to suppress alerted the district court to the constitutional prohibition against unreasonable searches and seizures

under which he sought protection. At the hearing on the motion, Defendant explained the essential facts of his case and clearly stated his legal argument. The district court later ruled on the motion. Nothing further was required of Defendant to preserve his argument for appeal. *See State v. Gomez,* 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1 (observing that an issue is preserved under the New Mexico Constitution by asserting the constitutional principle that provides the protection sought, establishing the essential factual underpinnings, and fairly invoking a ruling by the district court). We may therefore consider the merits of this case.

## SEIZURE

▆▆▆ {9} Law enforcement officers generally need no justification to approach private individuals on the street to ask questions. *State v. Jason L.,* 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856; *State v. Walters,* 1997–NMCA–013, ¶ 18, 123 N.M. 88, 934 P.2d 282. However, if an officer conveys a message that an individual is not free to walk away, by "either physical force or a showing of authority," the encounter becomes a seizure under the Fourth Amendment. *Jason L.,* 2000–NMSC–018, ¶¶ 14–15, 129 N.M. 119, 2 P.3d 856. Following this logic, our Supreme Court has noted that the following circumstances would support an assertion that a seizure took place: (1) "the threatening presence of several officers," (2) "the display of a weapon by an officer," (3) "some physical touching of the person of the citizen," or (4) "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* ¶ 16, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted).

{10} Of the four factors presented above, at least three are applicable to Defendant in this case. First, Agents Edmondson and Ballou drove their vehicle to the curb of the street, and then both officers exited to stop him. Second, Agent Ballou drew his firearm when Defendant began to step backward in reaction to the rapidly approaching officers. Third, as Agent Edmondson expressly acknowledged, Defendant was not asked any questions until Agent Ballou drew his weap-

on, and Defendant was not free to leave at that point. Indeed, after Agent Ballou drew his weapon, Defendant immediately submitted to the officers' display of authority, indicating that he was seized at that moment. *See, e.g., State v. Harbison,* 2007–NMSC–016, ¶ 12, 141 N.M. 392, 156 P.3d 30 (observing that there would be "no question" that a seizure occurred when law enforcement officers drew their weapons, commanded compliance, and the subject submitted to that show of authority); *Jason L.,* 2000–NMSC–018, ¶ 17, 129 N.M. 119, 2 P.3d 856 (indicating that the subjects were seized when two armed police officers approached them on an empty street, addressed them in an intrusive and demanding tone, and inquired whether they possessed weapons); *State v. Boblick,* 2004–NMCA–078, ¶ 10, 135 N.M. 754, 93 P.3d 775 (observing that a seizure occurred when officers showed their authority by approaching a subject, asking him to exit his vehicle, questioning him about weapons, and when one of the officers testified that the subject was not free to leave during the interaction). We therefore conclude that Defendant was seized under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

## SEIZURE BY DETENTION VERSUS SEIZURE BY ARREST

▆▆▆ {11} Our next inquiry requires us to differentiate between a seizure by investigatory detention and a seizure by arrest. The district court concluded that the Defendant's seizure was supported by probable cause, but the parties appear to take the position that the relevant inquiry concerns the existence of reasonable suspicion. *Compare State v. Taylor,* 1999–NMCA–022, ¶ 7, 126 N.M. 569, 973 P.2d 246 ("An investigatory stop is based on reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring.") (internal quotation marks and citation omitted), *with State v. Sanchez,* 2001–NMCA–109, ¶ 6, 131 N.M. 355, 36 P.3d 446 ("A police officer has probable cause when facts and circumstances within the officer's knowledge, or about which the officer

has reasonably trustworthy information, are sufficient to warrant an officer of reasonable caution to believe that an offense is being committed or has been committed."). The decision of which standard to apply is crucial to the resolution of this case because if Defendant's encounter with the officers rose to the level of a de facto arrest, the propriety of his seizure would depend upon the existence of probable cause, but if the encounter only constituted an investigatory detention, the seizure would only need to be supported by reasonable suspicion. *See Jason L.*, 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856 ("An arrest must be supported by probable cause and an investigatory stop must be supported by reasonable suspicion.").

{12} Our Supreme Court has stated that "[a] bright line test does not exist to evaluate whether an investigatory seizure is invasive enough to constitute an arrest requiring probable cause." *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994). There are, however, several factors that guide us in making such a distinction, including the length of the detention, the place of the detention, and the degree to which the subject's freedom of movement was restricted. *Id.* at 318, 871 P.2d at 974. In this case, Defendant's detention was very brief, and he was detained in a public area in broad daylight. By contrast, the degree to which Defendant's freedom of movement was restricted was very high when Agent Ballou pointed his firearm at him. Such a restriction on movement alone, however, does not necessarily lead to the conclusion that Defendant was under arrest. *See State v. Lovato*, 112 N.M. 517, 522, 817 P.2d 251, 256 (Ct.App.1991) (explaining that under certain circumstances, officers may draw "their guns and use reasonable force in effectuating [a] stop without such action automatically constituting an arrest"); *see also State v. Jimmy R.*, 1997–NMCA–107, ¶¶ 2–4, 124 N.M. 45, 946 P.2d 648 (applying the reasonable suspicion standard in a case in which an officer drove up to the subjects, drew a weapon, ordered the subjects to the ground, handcuffed them, and searched them). Indeed, the other circumstances suggest that Defendant was detained for investigatory purposes and that he was not under arrest.

{13} We conclude that the initial seizure of Defendant must be classified as an investigatory detention. As such, the focus of our analysis shifts to whether the officers had reasonable suspicion to detain him. *See Jason L.*, 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856.

## REASONABLE SUSPICION TO DETAIN

{14} Despite the officers' initial intent to merely ask Defendant a few questions, the encounter quickly escalated into an investigatory detention, which required the officers to work within constitutional constraints. *Boblick*, 2004–NMCA–078, ¶¶ 10–11, 135 N.M. 754, 93 P.3d 775. In order to subject an individual to an investigatory detention for the purpose of frisking for weapons, an officer must have an articulable reasonable suspicion that the individual "is both armed *and* presently dangerous." *Vandenberg*, 2003–NMSC–030, ¶ 22, 134 N.M. 566, 81 P.3d 19. In determining whether reasonable suspicion exists, we apply an objective standard "that takes into account the totality of the circumstances and all information available to the officer" at the moment of the detention. *State v. Morales*, 2005–NMCA–027, ¶ 14, 137 N.M. 73, 107 P.3d 513.

{15} As discussed above, Defendant was detained when Agent Ballou drew his gun, asked him whether he was carrying any weapons, and caused him to submit to the officers' display of authority. Our review of the record, viewed in the light most favorable to the district court's ruling, indicates that the officers were aware of the following circumstances at the inception of the detention: (1) Defendant was walking down a residential street while carrying a pair of pants; (2) when the officers drove by, Defendant gave them a look of surprise, which Agent Edmondson described as a "holy cow" or a "deer in the headlight" look; (3) after the officers passed, Defendant moved out of the street and onto the sidewalk; (4) Defendant appeared to be nervous; (5) as the agents approached and displayed their badges, Defendant lowered the arm upon which he was carrying the pants so that it was positioned next to his left hip; and (6) Defendant took one or more steps backward.

{16} We fail to see how either the first or the third enumerated circumstances suggests that Defendant was armed and dangerous. Simply wearing or carrying an extraneous item of clothing does not give rise to a reasonable suspicion of criminality. *See Jason L.*, 2000–NMSC–018, ¶ 22, 129 N.M. 119, 2 P.3d 856 (holding that the fact that the subject was wearing a coat on a summer evening did not give rise to an "individualized, particularized suspicion" of criminality). Second, although Agent Edmondson subjectively regarded Defendant's movement from the street to the sidewalk as "unusual," it seems objectively reasonable that the approach of a vehicle would inspire a pedestrian to move from the street to the relative safety of the sidewalk. *See State v. Anderson*, 107 N.M. 165, 169, 754 P.2d 542, 546 (Ct.App.1988) (noting that observations that "do nothing more than highlight the ordinary, rather than the sinister," do not establish reasonable suspicion) (internal quotation marks omitted). We therefore reject the State's suggestion that either of these circumstances provides support for the decision to detain Defendant.

{17} Turning to the second circumstance, a "look" that suggests hostility or aggression may contribute to the existence of reasonable suspicion. *See, e.g., State v. Garcia*, 2005–NMSC–017, ¶¶ 2, 32, 138 N.M. 1, 116 P.3d 72 (holding that hostile behavior, which included an "aggressive look," a refusal to return to the car, and a glimpse of a gun, provided an officer with reasonable suspicion that the subject was both armed and dangerous). In this case, however, Agent Edmondson's testimony indicated that Defendant's "look" merely reflected his surprise or astonishment. As a consequence, we do not see how Defendant's "look" could have been a legitimate factor in giving rise to an objectively reasonable safety concern.

{18} We similarly acknowledge that a person's nervousness may provide a degree of support in rationalizing a weapons-related detention. *See Vandenberg*, 2003–NMSC–030, ¶ 31, 134 N.M. 566, 81 P.3d 19 ("[W]hile nervousness may be a relevant factor in the calculus, we do not consider nervousness alone sufficient to justify a frisk for weapons."). It may only provide such support, however, if specific reasons are articulated as to why the person's nervousness caused the officer to reasonably believe that his or her safety was threatened. *Id.* Typically, this entails a description of erratic, hostile, aggressive, uncooperative, or unpredictable behavior. *See id.* ¶¶ 29–30, 134 N.M. 566, 81 P.3d 19. In this case, no behavior of that nature was suggested in the testimony given at the suppression hearing. Agent Edmondson simply stated that Defendant was nervous. An observation of this nature is entitled to little weight in determining whether officers had reasonable suspicion to search a defendant for weapons. *Id.* ¶ 31, 134 N.M. 566, 81 P.3d 19 (declining to equate an observation of simple nervousness with reasonable suspicion sufficient to justify a frisk for weapons).

{19} Next, to the extent that it created an appearance that he might have been armed and dangerous, Defendant's act of lowering the arm upon which he was carrying the pants, so that it was positioned next to his left hip, might have provided a degree of support for further inquiry by the officers. *See, e.g., Garcia*, 2005–NMSC–017, ¶¶ 2, 32, 138 N.M. 1, 116 P.3d 72 (holding that a subject's behavior, which included positioning his body to conceal his right side from view, provided support for reasonable suspicion that he was both armed and dangerous). However, apart from an "intuition" that Defendant was "hiding something," Agent Edmondson's testimony did not suggest that Defendant's conduct created a safety concern. Agent Edmondson did not observe either a weapon or a characteristic bulge suggesting a possible weapon, Defendant did not conceal his hands from view, and Agent Edmondson admitted that, prior to the seizure, he had no subjective reason to believe that Defendant had a gun. Evidence of Agent Edmondson's "[i]narticulate hunches and unsupported intuition" simply do not support the State's contention that the officers had reasonable suspicion to detain and search Defendant. *See State v. Scott*, 2006–NMCA–003, ¶ 30, 138 N.M. 751, 126 P.3d 567.

{20} Finally, to the extent that it could reasonably be interpreted as a hostile or aggressive gesture, Defendant's act of stepping backward might have provided some support in favor of the district court's determination that his detention was legal. *See Vandenberg*, 2003–NMSC–030, ¶¶ 11, 30, 134 N.M. 566, 81 P.3d 19 (observing that a subject's hesitation in complying with an officer commands, including taking a " 'very large' step" backward and questioning the officer's authority, contributed to a finding that there was a sufficient objective basis for the officer's safety concerns to justify a frisk for weapons). However, as we have discussed, the State did not present any objective evidence indicating that Defendant's conduct was hostile or aggressive. Defendant promptly submitted to the officers' display of authority, and he made no threatening gestures or comments. Under such circumstances, we fail to see how the officers' conduct in response to Defendant taking backward steps could be regarded as objectively reasonable. *See Boblick*, 2004–NMCA–078, ¶¶ 2–3, 11–13, 135 N.M. 754, 93 P.3d 775 (holding that a weapons frisk was unjustified in the course of a "community caretaking" encounter when there was no indication that a serious crime was in progress, the subject appeared dazed but complied with officer requests, and the subject did not raise his voice or make threats of any kind).

{21} Viewing all of the foregoing facts and circumstances collectively and in the light most favorable to the State, *see State v. Graham*, 2005–NMSC–004, ¶ 13, 137 N.M. 197, 109 P.3d 285, Defendant displayed nothing more than a nervous and possibly furtive demeanor before he was detained. We conclude that his actions were not enough to create reasonable suspicion to detain him, particularly in light of Agent Edmondson's acknowledgment that he had no objective reason to believe that Defendant was either engaged in criminal activity or concealing a firearm.

{22} The officers' immediate escalation of a theoretically consensual encounter into a highly intrusive investigatory detention merits comment. "In New Mexico, the ultimate question in all cases regarding alleged search

and seizure violations is whether the search and seizure was reasonable." *State v. Attaway*, 117 N.M. 141, 149, 870 P.2d 103, 111 (1994). Our case law further indicates that, when dealing with a nervous subject who does not otherwise appear to present an immediate threat, law enforcement officers should endeavor to proceed incrementally. *Vandenberg*, 2003–NMSC–030, ¶¶ 26, 30, 134 N.M. 566, 81 P.3d 19; *see State v. Chapman*, 1999–NMCA–106, ¶¶ 17–18, 127 N.M. 721, 986 P.2d 1122. In light of the absence of threatening or otherwise suspicious conduct or demeanor, the officers' election to seize Defendant at gunpoint within seconds of initiating contact with him was not a reasonable and constitutionally permissible course of conduct.

{23} Agent Edmondson suggested in his testimony that the seizure of Defendant was justified, in part, because he always inquires about weapons in similar situations. However, we note that "a general supposition that all citizens pose an unknown threat is not enough to tip the scales against the privacy of the individual." *Boblick*, 2004–NMCA–078, ¶ 13, 135 N.M. 754, 93 P.3d 775. Although it may be prudent for police officers to ask citizens who appear to be nervous if they have weapons, a seizure and patdown of such a citizen without more than an assumption of danger is not constitutionally permissible. *See id.* In this case, the officers may very well have perceived Defendant to be dangerous, but they seized him before they actually knew that he posed any verifiable threat to their safety. As a result, the absence of specifically articulable and objectively reasonable grounds for the officers' concern that Defendant was armed and dangerous before seizing him constitutes a fatal deficiency.

{24} We also understand the State to argue that Defendant's statements that he was carrying a firearm and that he was a felon are enough to justify the officers' conduct. However, reasonable suspicion must exist at the inception of a seizure, and information that is subsequently obtained cannot be relied upon to support the legality of a detention. *Jason L.*, 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856. Because all of the

testimony given at the suppression hearing indicates that Defendant made the incriminating statements at issue after he was seized, the State's argument is unpersuasive. *See id.*

{25} Finally, the State relies upon a series of cases in which the safety concerns of officers were invoked as appropriate bases for similar seizures. However, that line of cases is readily distinguishable from this case because the officers in those cases were actively investigating violent crimes in which they had reason to believe that the subjects were involved. *See State v. Barragan*, 2001–NMCA–086, ¶¶ 12–13, 131 N.M. 281, 34 P.3d 1157; *State v. Madsen*, 2000–NMCA–050, ¶¶ 10–13, 129 N.M. 251, 5 P.3d 573; *Jimmy R.*, 1997–NMCA–107, ¶¶ 2–4, 124 N.M. 45, 946 P.2d 648; *Lovato*, 112 N.M. at 518–20, 817 P.2d at 252–54. In this case, by contrast, there was no report of criminal activity in the area, and Agent Edmondson acknowledged that he had no reason to believe that Defendant was involved in any kind of criminal activity prior to the seizure. Neither did Agent Edmonson articulate that he became concerned for his safety at any point during the detention. As a result, we reject the State's argument.

**CONCLUSION**

{26} For the reasons stated above, we conclude that the district court erred in denying Defendant's motion to suppress. In light of this determination, it is unnecessary for us to consider the merits of the State's supplemental challenge to the validity of Defendant's sentence. We reverse and remand for further proceedings consistent with this opinion.

{27} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.