IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.                                                                    No. 29,174

MELISSA BENAVIDEZ,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Robert M. Schwartz, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**KENNEDY, Judge.**

      The State appeals the district court's order suppressing evidence pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972).  This Court issued a calendar notice proposing to affirm and the State responded with a memorandum in opposition which we have duly considered.  For the reasons discussed below, we affirm.

**BACKGROUND**

Officer Ficke was dispatched to a motel to investigate a report of a suspicious person. [DS 2] On arriving at the motel, the officer noticed three young girls playing in the parking lot next to a vehicle. [Id.] The officer asked an unidentified man whether he knew the children, and the man indicated that the children's mother was in Room 110. [Id.] The officer located Defendant outside of Room 110, asked her for her name and asked her where her children were. [DS 2-3] Defendant initially asked the officer "why," but when asked again identified herself as Melissa Benavidez and stated that she believed her children were outside. [DS 3] The officer asked Defendant for identification, which Defendant indicated was in her purse inside her motel room. [Id.] The officer accompanied Defendant to get a key from the desk and went to her motel room to check her identification. [Id.]

Upon arriving at the room, Defendant immediately retrieved her identification from her purse and presented it to the officer; however, the officer testified that the manner in which Defendant retrieved her identification caught his attention, because she did so in a manner that prohibited the officer from seeing inside her purse. [Id.] The officer testified that he demanded to look in the purse and Defendant refused. [Id.] The officer further testified that Defendant appeared nervous and was clutching her purse tightly. [Id.] The officer requested that Defendant accompany him outside and had Defendant walk in front of him out of concern for his safety, because he feared she might have a weapon in her purse. [Id.]

The officer testified he noticed Defendant was hugging her purse tightly, was

2

concerned for his safety, and ordered Defendant to give him the purse so he could check for weapons. [DS 4] Defendant again refused. [Id.] When the officer tried to take the purse from Defendant, she turned away. [Id.] The officer grabbed Defendant's arm, applying pressure to her elbow and wrist, and took the purse from Defendant. [Id.] The officer searched the purse and found a digital scale and two small baggies with white residue. [Id.] The district court issued an order suppressing this evidence on the grounds that the facts articulated by the officer — Defendant's nervousness, clutching of her purse, and refusal to consent to the search of her purse — were insufficient to permit the officer to search Defendant's purse out of concern for his safety. [RP 54] The State appeals.

DISCUSSION

This Court issued a calendar notice in which we proposed to affirm the district court's order suppressing evidence obtained from a search of Defendant's purse. In response, the State relied on *State v. Chapman*, 1999-NMCA-106, 127 N.M. 721, 986 P.2d 1122, to argue that the officer identified specific behaviors and changes in Defendant's demeanor and attitude to explain why he believed that Defendant might be armed and dangerous. [MIO 6] The State argued that, as in *Chapman*, Defendant's uncooperative behavior escalated during the encounter. Specifically, the State argued that Defendant was uncooperative at the beginning of the encounter, responding "why?" when the officer asked her name, and clutching her purse to her chest to prevent the officer from seeing inside. [MIO 7] The State also relied on the fact that, after the officer had demanded to inspect Defendant's purse for the second time and

3

attempted to take Defendant's purse from her, Defendant turned away, as if to run from the officer. [MIO 7]

We find the State's reliance on *Chapman* unpersuasive. In *Chapman*, this Court held that the defendant's failure to make eye contact, unusual level of nervousness, high-pitched tone of voice, anxious and aggressive response to the deputy questioning him about weapons, and uncontrollable shaking provided justification for the deputy's pat down of the defendant. 1999-NMCA-106, ¶¶ 17-18. Here, Defendant did not display the type or level of nervousness present in *Chapman*. To the contrary, in this case, the State has not indicated any nervousness by Defendant other than her clutching her purse to her chest and turning away from the officer when he attempted to forcibly take the purse from her. We conclude that Defendant clutching her purse to her chest, without a furtive movement or something more, was insufficient to cause the officer to reasonably believe that Defendant was armed and dangerous.

To the extent the State relies on Defendant asking the officer why he wanted her name to argue that Defendant's uncooperativeness caused the officer to reasonably believe Defendant was armed and dangerous, we find this argument unpersuasive where, after asking the officer "why," Defendant cooperated with the officer by going to get her room key, taking the officer to her room to retrieve her identification, showing the officer her identification, and accompanying the officer outside and walking in front of the officer at the officer's request. We therefore conclude that Defendant's asking the officer why he wanted her name, holding her purse to her chest, and refusing to grant the officer her consent to search her purse was insufficient

4

to constitute a reasonable and articulable suspicion that Defendant was armed and dangerous.

The State relies on *State v. Amaya*, 89 P.3d 1163 (Or. 2004), but our review of the facts in that case lead us to conclude that the State's reliance is misplaced. In *Amaya*, the defendant informed the officer that there was a gun in her purse, a critical fact that is not present in the case before us. *Id.* at 1165.

Turning to the reasons articulated by the officer in this case in support of the search, we note that Defendant's refusal to consent to a search of her purse may not be considered in determining whether the officer had reasonable and articulable suspicion that Defendant was armed and dangerous. *See State v. Vandenberg*, 2003-NMSC-030, ¶ 46, 134 N.M. 566, 81 P.3d 19 ("[W]e think it self-evident that [d]efendants' refusal is not a probative fact of guilt, suspicion, or dangerousness."). In *Vandenberg*, the Court drew no distinction between a refusal of a search and a refusal of a canine sniff. *Id.* To search in the present case, the officer was required to show a reasonable and articulable suspicion that Defendant was armed and dangerous. In *Vandenberg*, the Court determined that the defendant's refusal to consent to a canine sniff could not be considered in determining whether the officer had reasonable and articulable suspicion that the defendants were armed and dangerous. *Id.* The Court also stated, "[W]hen [d]efendants refused the canine sniff, their conduct was a neutral act which neither incriminated nor exculpated them. Therefore, in determining whether [the officer] had reasonable suspicion to believe that [d]efendants were dangerous, we do not consider [d]efendants' refusal to consent

5

as a relevant fact." *Id.* ¶ 47.

Further, to the degree the State relied on Defendant clutching her purse and turning away from the officer after the officer ordered Defendant to allow him to search her purse and attempted to take Defendant's purse from her, [RP 52] Defendant's acts were consistent with her assertion of her right to refuse to consent to the search of her belongings and would not have caused a reasonable officer to feel threatened. Finally, Defendant's nervousness, alone, was not "sufficient to justify . . . a protective frisk for safety reasons." *State v. Pablo R.*, 2006-NMCA-072, ¶ 15, 139 N.M. 744, 137 P.3d 1198. Also, the officer failed to articulate specific reasons why Defendant's nervousness caused him to believe his safety was compromised or describe any type of "erratic, hostile, aggressive, uncooperative, or unpredictable behavior" that would cause the officer to feel threatened. *State v. Gutierrez*, 2008-NMCA-015, ¶ 18, 143 N.M. 522, 177 P.3d 1096 (citation omitted). An observation that Defendant is simply nervous "is entitled to little weight in determining whether officers had reasonable suspicion to search a defendant for weapons." *Id.* Thus, we give it little weight here. Therefore, we conclude that Defendant's nervousness, clutching of her purse, and refusal to consent to the search of her purse, did not constitute a sufficient degree of articulable suspicion for the officer to reasonably conclude that Defendant was armed and dangerous.

**CONCLUSION**

Accordingly, for the reasons stated above, we affirm.

**IT IS SO ORDERED.**

6

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**CELIA FOY CASTILLO, Judge**