This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                            **NO.   28,481**

**JOHN RAMIREZ**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Albert S. "Pat" Murdoch, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ROBLES, Judge.**

John Ramirez (Defendant) appeals the district court's denial of his motion to suppress. Defendant asserts protection under both the federal and state constitutions and argues that a police officer, investigating a parking violation, may not further detain an individual by requesting a license and registration and, in doing so, results in an unconstitutional detention, which must result in the suppression of the evidence. In doing so, Defendant asks this Court to make a distinction between how we treat parking violations and moving violations. We conclude that our law does not support such a distinction. Furthermore, applying our seizure analysis, we conclude that there was nothing unlawful about Defendant's stop. Defendant does not explain how our analysis of the New Mexico Constitution should be different than its federal counterpart. Because of the limited manner in which Defendant addresses this argument and our duty to resist making arguments for parties, we decline to discuss any possible distinctions between the two formative documents. Accordingly, we affirm.

**I.     BACKGROUND**

At the hearing on the motion to suppress, the only witness presented was Officer Andrew Feist, who testified as follows. On March 17, 2006, Officer Feist was

on routine mountain bike patrol when he noticed Defendant's illegally parked vehicle. The vehicle was not running and was double-parked in a handicapped space, blocking the handicapped ramp. The officer began talking with an individual in the vicinity and inquired whether he was the owner of the illegally parked vehicle, "at which time[,] he told me he was not." As the officer was talking with the individual, the officer "heard car doors slam and the engine . . . start up."

Officer Feist returned to the vehicle and saw Defendant in the driver's seat with another individual in the passenger's seat. The officer identified himself and asked Defendant whether he had a handicap parking placard, to which Defendant replied he did not. It was then that the officer asked Defendant for his license and registration, so that he could write him a citation. As Defendant leaned towards the glove compartment, the officer "leaned into the vehicle and looked straight down into the driver's door [but without placing his] head inside the vehicle, just directly alongside, to look down there." In the armrest of the door, there was "a clear plastic baggie that contained a brown substance that, through [the officer's] training and experience, was consistent with heroin. Alongside of that, there was a one-dollar bill that was rolled up and had both ends of it burnt." The officer stated "[t]hat [a one-dollar bill] is commonly used in the smoking of a narcotic."

3

As a result of this discovery, Defendant was arrested. Officer Feist testified further that his reason for attempting to make contact with the owner of the illegally parked vehicle was to see whether the owner had a handicap placard, or to see if there was some kind of emergency which would justify the vehicle being parked as it was. The district court denied the motion to suppress, and Defendant entered a conditional plea to possession of heroin, reserving his right to appeal the district court's denial, and was sentenced to eighteen months of supervised probation.

## II.    DISCUSSION

"The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). We will adopt an interpretation of the factual background that is "most favorable to the prevailing party, as long as the facts are supported by substantial evidence." *State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19. It is "[a]gainst [the] factual backdrop [that] we evaluate de novo the reasonableness of the conduct of law enforcement officers, considering the totality of the circumstances." *State v. Gutierrez*, 2008-NMCA-015, ¶ 4, 143 N.M. 522, 177 P.3d 1096 (filed 2007).

## A.  Request for Driver's Information

Defendant argues that a parking violation is different from a moving violation. Defendant also argues that because a parking ticket can be issued without examining a driver's license or registration, Officer Feist's request for such documentation was not constitutional.

New Mexico cases have previously held that following a lawful stop, a police officer may ask a driver for their driving documentation. *State v. Reynolds*, 119 N.M. 383, 386, 388, 890 P.2d 1315, 1318, 1320 (1995) (noting that individuals have little privacy interests in public documentation and stating that "[i]f a driver invites the attention of a police officer by engaging in unsafe driving conduct, or whenever an officer is reasonably called upon to make contact with a driver . . . , the officer has the right to know with whom he is talking and may check to see that the driver is both licensed and driving a car that is registered and insured"); *State v. Rubio*, 2006-NMCA-067, ¶ 13, 139 N.M. 612, 136 P.3d 1022 (following a lawful vehicle stop, a request for documents in connection with the stop does not violate state or federal constitutions). "Following a valid stop, for a traffic violation, an officer may lawfully continue with a de minimis detention for inquiry into matters reasonably related to the circumstances that initially justified the stop and to check out license, registration, and insurance." *State v. Affsprung*, 2004-NMCA-038, ¶ 10, 135 N.M.

306, 87 P.3d 1088. This applies to situations involving both moving and non-moving vehicles. *State v. Williams*, 2006-NMCA-062, ¶ 16, 139 N.M. 578, 136 P.3d 579.

Our statutory scheme does not distinguish between parking and moving violations in this regard. NMSA 1978, Section 66-7-352.5(A)-(B) (2007) makes it unlawful to park a vehicle in a space reserved for persons with mobility impairment, or to park in such a manner so as to block access to any part of a curb designed for access by persons with mobility impairment. This provision is included as part of the traffic code, and law enforcement personnel are allowed to issue citations for violations of this section. NMSA 1978, § 66-7-352.6(A) (2006). The traffic laws laid out in Chapter 66, Article 7 relate to the operation of vehicles "upon highways, except where a different place is specifically referred to in a given section." NMSA 1978, § 66-7-2(A) (2001). Immediately following that language, Section 66-7-352.5 is specifically identified as one of the exceptions that shall apply "throughout the state" and not just on highways. § 66-7-2(B). Therefore, the particular type of illegal parking addressed by Section 66-7-352.5 is a violation of the traffic code. Our statutes command obedience to the traffic laws located throughout Article 7 of Chapter 66 and makes it a misdemeanor for an individual to do one of the enumerated forbidden acts or fail to perform a required act. NMSA 1978, § 66-7-3 (1978). Finally, drivers are required to carry their licenses while operating a motor vehicle and

to produce them upon demand by an officer. *See* NMSA 1978, § 66-5-16 (1985); *Williams*, 2006-NMCA-062, ¶ 15 (concluding that an individual sitting in the driver's seat of a parked vehicle is a driver and operator under New Mexico law). We therefore conclude that the statutory framework, combined with our existing case law, allows police officers to obtain drivers' information following a lawful stop or detention.

**B.    Seizure**

The State concedes that Defendant was seized. The Fourth Amendment protects citizens from unreasonable seizures. *See* U.S. Const. amend. IV; *Williams*, 2006-NMCA-062, ¶ 8. We use a two-part test to determine whether a traffic stop or an investigatory stop was reasonable. *Id*. ¶¶ 3, 16, 19, 22 (using the two-part test after concluding that the defendant was seized to determine whether a police officer lawfully interacted with a driver of a legally parked car when he asked the driver for his license). The test contemplates "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Reynolds*, 119 N.M. at 385, 890 P.2d at 1317 (internal quotation marks and citation omitted). Within the first inquiry, a seizure of a citizen is allowed if it is supported by the existence of reasonable suspicion. *Gutierrez,* 2008-NMCA-015, ¶ 11. Reasonable suspicion consists of

7

specific articulable facts that objectively would give the reasonable person the inference that a crime has been, is being, or will be committed. *Id.* However, the reasonableness aspect is judged by focusing on the government's interest in the intrusion balanced against the citizen's constitutional interest in being free of such an intrusion. *Reynolds*, 119 N.M. at 385, 890 P.2d at 1317; *Williams*, 2006-NMCA-062, ¶ 8.

Our cases have previously held that individuals may be legally stopped if a police officer has a reasonable suspicion that the person in question has violated a traffic law. *Affsprung*, 2004-NMCA-038, ¶ 9. In *Williams*, this Court concluded that seizure analysis should be used whether a vehicle was moving or not moving at the beginning of the police-citizen interaction. 2006-NMCA-062, ¶ 16. We noted that holding otherwise would offer more or less constitutional protections to a citizen, depending on whether the vehicle they were in was in motion. *Id.* ¶ 17.

Just because a parking ticket may be written without communicating with a driver or examining a driver's license, does not mean that it is the only way to issue such a citation. In the instant case, Officer Feist testified that he observed a vehicle illegally parked, and his initial reason for approaching Defendant was the parking violation. *Cf.* ¶¶ 8, 25 (noting that the police officer had no articulable facts that the defendant was or was about to be engaged in criminal activity, and that the officer

observed no traffic violation when he approached a legally parked vehicle and asked the person sitting in the driver's seat for his license). We therefore conclude that the officer had sufficiently specific articulable facts particular to the situation that Defendant had broken a law. Once it was concluded that Defendant did not have a legitimate reason for double-parking and parking in a handicapped space, blocking the handicapped ramp, the officer could lawfully prevent Defendant from leaving the scene in order to give him a parking ticket and not offend the constitution by requesting Defendant's license and registration.

**III.    CONCLUSION**

We affirm Defendant's conviction for possession of heroin.

**IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**I CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

**TIMOTHY L. GARCIA, Judge (specially concurring)**

**GARCIA, Judge (specially concurring).**

I write to specially concur in this decision because Office Feist testified that he used the request for Defendant to provide his license and registration documents as an opportunity to lean in and look into the driver's compartment of the vehicle while Defendant was retrieving the requested documentation. *See State v. Prince*, 2004-NMCA-127, ¶¶ 10-11, 136 N.M. 521, 101 P.3d 332 (recognizing that an expansion of the scope of an initial traffic stop requires an articulation of specific and particularized facts to establish a reasonable belief that defendant has drugs in his possession). Defendant and the district court did not follow up with additional questions about this interesting maneuver by Officer Feist at the suppression hearing. I cannot avoid commenting on the pretextual nature of this maneuver even though I recognize that our plain view doctrine might apply to this situation.

Additional questioning was needed to develop the unknown reasons behind Officer Feist's intentional maneuver to peer inside the driver compartment while Defendant was instructed to retrieve his documents on the other side of the vehicle. The Fourth Amendment could be implicated if the purpose of the stop changed when Officer Feist reached the driver's window and had visual contact with Defendant. At this point, Office Feist's instincts and suspicions may have transformed the stop into an investigation detention to pursue new suspicions or hunches regarding narcotics or

other activities by Defendant or his passenger. His instruction that kept Defendant busy in the glove compartment while he immediately repositioned himself to peer down into every area of the driver's compartment suggest that something raised new suspicions for the officer. Officer Feist's failure to follow through with the traffic citation only heightens my concern regarding his intentions once he reached the vehicle. Without further development of this issue below, however, we cannot address these concerns further. I therefore concur based upon the record before us.

_____

**TIMOTHY L. GARCIA, Judge**