This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS FOR THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

　　Plaintiff-Appellee,

v.                                                                 **No. A-1-CA-35074**

**MARKOS ANTONIO ESQUER,**

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1} A jury convicted Defendant Markos Antonio Esquer of unlawful taking of a vehicle or motor vehicle, contrary to NMSA 1978, Section 66-3-504 (2009, recompiled and amended as NMSA 1978, Section 30-16D-1 (2009)) and NMSA 1978, Section 66-8-9 (1981); possession of burglary tools, contrary to NMSA 1978, Section 30-16-5 (1963); and, possession of alcoholic beverages in an open container, contrary to NMSA 1978, Section 66-8-138 (2013). Defendant appeals on three grounds: first, he argues that his Sixth Amendment of the United States Constitution right to a speedy trial was violated; second, he argues that the State presented insufficient evidence to convict him of possession of burglary tools; and third, he argues that the district court abused its discretion in admitting into evidence a redacted copy of the title to the bait vehicle he was accused of stealing. We affirm in part and reverse in part.

**DISCUSSION**

**Speedy Trial Analysis**

{2} The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"). While we recognize the "societal interest in bringing an accused to trial," we are tasked with looking closely at each claimed speedy trial violation. *State v. Garza*, 2009-NMSC-038, ¶¶

2

12-13, 146 N.M. 499, 212 P.3d 387. "The heart of the right to a speedy trial is preventing prejudice to the accused." *Id.* ¶ 12. Thus, there must be more than simply a delay in bringing the case to trial. *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

{3}     In making our determination, "we use the four-factor test set forth in *Barker*, balancing the length of delay, the reason for delay, the defendant's assertion of the right to a speedy trial, and the prejudice to the defendant." *Ochoa*, 2017-NMSC-031, ¶ 4; *see Barker v. Wingo*, 407 U.S. 514, 530 (1972).

{4}     The speedy trial analysis is fluid and "specifically rejects inflexible, bright-line approaches." *Garza*, 2009-NMSC-038, ¶ 13. Instead, the *Barker* analysis is a balancing test in which we weigh the actions and conduct of both the prosecution and the defendant. *Barker*, 407 U.S. at 530.

{5}     "In analyzing these factors, we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his [or her] speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81; *see Ochoa*, 2017-NMSC-031, ¶ 4 ("We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo.").

3

**{6}** For the procedural and factual background, we rely primarily on the district court's undisputed findings of fact set forth in the order denying Defendant's motion to dismiss for violation of Defendant's right to a speedy trial.

**{7}** On October 9, 2013, a grand jury indicted Defendant on charges of unlawful taking of a vehicle or motor vehicle, possession of burglary tools, possession of alcoholic beverages in an open container, and three additional charges that are not pertinent to the appeal. The charges arose out of a September 24, 2013, incident in which Defendant stole a bait vehicle belonging to the City of Albuquerque. Defendant was arraigned on October 21, 2013, and the district court set his bond for $15,000. He also asserted his right to speedy trial at that time. On October 24, 2013, counsel entered an appearance on Defendant's behalf and filed a pro forma demand for a speedy trial. The same day, Defendant exercised his statutory right to excuse the first district court judge assigned to his case. On November 8, 2013, Defendant's case was reassigned to another district court judge. On December 4, 2013, the State entered its appearance. On January 9, 2014, the first pretrial conference was reset to March 20, 2014, which was in turn reset for May 22, 2014. By April 2, 2014, the parties had begun conducting witness interviews and two officer interviews had been completed.

**{8}** On April 18, 2014, Defendant filed a motion for release or to reduce his bond. The district court held a hearing on Defendant's motion on May 7, 2014, and

4

denied it the same day. The following day on May 8, 2014, the district court filed a pretrial scheduling order, setting a docket call for December 17, 2014, and a trial for four days in January 2015. Four days later, Defendant substituted his counsel and he posted bond on May 27, 2014. On July 14, 2014, an amended witness list was filed adding one officer. On July 31, 2014, all but one of the witness interviews had been completed. On November 6, 2014, our Supreme Court adopted LR2-400 NMRA (2014).

{9}     In response to the adoption of the local rule the December 2014 docket call was vacated, and the district court held a scheduling conference instead on January 12, 2015, and re-set trial for March 2015. Also on January 12, 2015, Defendant reasserted his speedy trial demand, and engaged in plea negotiations with the State. Days later Defendant filed a motion to dismiss, alleging that his right to a speedy trial had been violated. On January 22, 2015, the State filed an amended witness list and asserted that it was ready for trial. For the third time on January 22, 2015, Defendant substituted his counsel. The State responded to Defendant's motion to dismiss on speedy trial grounds on January 26, 2015. On February 2, 2015, the State substituted counsel. The district court denied Defendant's motion to dismiss on March 9, 2015. Trial was held on March 9, 2015 and March 10, 2015. Given the above undisputed facts, we now turn to our analysis.

**Length of Delay**

5

{10}     The length of delay is the first factor to be considered in the speedy trial analysis. *See Barker*, 407 U.S. at 530. It functions as a "triggering mechanism" in that if a court determines the length of delay is presumptively prejudicial it must conduct further inquiry into the remaining *Barker* factors. *See Garza*, 2009-NMSC-038, ¶¶ 21-23; *see also Ochoa*, 2017-NMSC-031, ¶ 12 (describing the length of delay as both the threshold question in the speedy trial analysis and one factor to be weighed with the other three *Barker* factors). "We calculate the length of delay from the time the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *Flores*, 2015-NMCA-081, ¶ 5 (internal quotation marks and citation omitted).

{11}     In *Garza*, our Supreme Court articulated the following benchmarks for determining when the length of delay becomes presumptively prejudicial: twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. 2009-NMSC-038, ¶ 48. These benchmarks are not bright-line tests, *see id.* ¶ 49, but instead function to trigger the district court to analyze other factors in the speedy trial analysis if they are not met. *Ochoa*, 2017-NMSC-031, ¶ 13. The longer the delay is, the more heavily this factor will weigh in Defendant's favor. *See id.* ¶ 14 (explaining "a delay barely crossing the guideline is of little help to the defendant's claim, while a delay of extraordinary length

weighs heavily in favor of the defendant." (internal quotation marks and citation omitted)).

{12} "We defer to the district court's finding of complexity," *id.* ¶ 15, as "[t]he question of the complexity of a case . . . is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities." *State v. Rojo*, 1999-NMSC-001, ¶ 52, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). The district court determined this to be a simple case; therefore, it should have been brought to trial within twelve months. *See Garza*, 2009-NMSC-038, ¶ 48.

{13} Defendant's speedy trial right attached on October 9, 2013, when the grand jury indicted him on six charges. Defendant's trial ultimately took place over two days from March 9, 2015 to March 10, 2015, approximately 17 months after Defendant was initially charged. Because this five month delay surpassed the twelve month guideline articulated in *Garza*, it is therefore considered presumptively prejudicial and sufficient to trigger inquiry into the remaining three *Barker* factors.

{14} We recognize that this first factor has a dual purpose. Not only is the length of delay the triggering mechanism for further inquiry into the *Barker* factors, it is also an independent factor to consider in determining whether a speedy trial

violation has occurred. *See Ochoa*, 2017-NMSC-031, ¶ 12 (describing the length of delay as "both the threshold question in the speedy trial analysis and a factor to be weighed with the other three *Barker* factors"); *Garza*, 2009-NMSC-038, ¶ 23 (directing courts to "consider the length of delay as one of four factors in the [*Barker*] analysis"). In weighing the length of the delay, "we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *State v. Spearman*, 2012-NMSC-023, ¶ 23, 283 P.3d 272 (internal quotation marks and citation omitted). "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24; *see State v. Serros*, 2016-NMSC-008, ¶ 26, 366 P.3d 1121 ("A delay that crosses the threshold for presumptive prejudice necessarily weighs in favor of the accused; the only question is, how heavily?"). The district court determined that "based on the passage of an additional [five] months beyond the triggering date, [this] delay weighs, at most, slightly against the State." We agree.

{15} In *State v. Wilson*, 2010-NMCA-018, ¶ 29, 147 N.M. 706, 228 P.3d 490, this Court held that a delay of five months beyond the presumptive period in a simple case did not weigh more than slightly against the state. The total lapse of time, measured from the date of the defendant's indictment to the beginning of his trial, totaled fourteen months. *Id*. ¶ 28. At the time, the presumptively prejudicial trigger for a simple case was nine months. *Id*. ¶ 25. This Court specifically stated, "[w]e

8

cannot say that the extended time of five months . . . was extraordinary, protracted, or otherwise a delay that requires us to weigh the length of delay factor against the [s]tate more than slightly." *Id.* ¶ 29. Here, Defendant was indicted on October 9, 2013, and trial began on March 9, 2015. Again, we cannot say that the additional five months was extraordinary, protracted or otherwise a delay requiring weighing this factor more than slightly against the State.

**Reasons for the Delay**

{16}    The second factor focuses on the reasons for the delay. *Barker*, 407 U.S. at 531. *Barker* identified three types of delay and the various weights that should be assigned to each. *Id.* The Court explained:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* "In addition, delay initiated by defense counsel generally weighs against the defendant." *Ochoa*, 2017-NMSC-031, ¶ 18.

{17}    Here, the district court detailed each relevant period of delay and assigned a weight to each. The district court initially noted that there was no indication that the State intentionally delayed the case in bad faith, nor were there any allegations that the delay was intentional or in bad faith.

9

{18} The district court found that the majority of the delay in the case was weighted neutrally. It identified the following periods of delay and attributed a neutral weight to each: (1) from the date of the indictment, October 9, 2013, to defense counsel's entry of appearance filed on October 24, 2013; (2) from the day after Defendant exercised his statutory right to excuse the initially assigned district court judge from presiding over his case on October 25, 2013, to the assignment of a new district court judge on November 8, 2013; (3) from the State's entry of appearance on December 4, 2013, to the first pretrial conference on January 9, 2014, during which the State provided a witness list and filed other customary demands; (4) from January 10, 2014 to April 2, 2014, during which the parties were conducting witness interviews; (5) from April 18, 2014 to May 7, 2014, during which the district court was considering Defendant's motion to reconsider his conditions of release; (6) from May 8, 2014 to July 31, 2014, during which the parties completed witness interviews; and (7) from January 12, 2015 to January 22, 2015, during which the parties were engaged in plea discussions. The total period of the delay the district court weighed neutrally was over eight months.

{19} The district court identified the following periods of delay and attributed a slight weight against the State for each: (1) from the day after the reassignment of the case from the first judge to the second judge on November 9, 2013, to the State's entry of appearance on December 4, 2013; (2) the district court's

10

administrative delays between August 1, 2014 until December 9, 2014; and (5) December 10, 2014 until the January 12, 2015, scheduling conference. The total period of delay the district court attributed to the State was over six months.

**{20}** While Defendant sets out, in detail, the procedural and factual background of the case, he sets forth a very general argument that any delays were attributable to either the State or to the district court, and that those delays are also attributed to the State. However, Defendant has not specifically attacked the district court's findings as they pertain to the district court's weight and attribution of the delays. As a result, the district court's determinations are conclusive. *See* Rule 12-318(A)(4) NMRA (stating that a finding that is not attacked by the appellant shall be deemed conclusive).

**{21}** A review of the record confirms the district court's finding that there is no evidence that either party engaged in deliberate or bad faith attempts to delay the trial. Notably, neither party ever requested a formal continuance of the trial setting, although Defendant switched his counsel on three separate occasions, effectively requiring an extension of the trial date. Throughout the case, the parties were engaged in standard litigation practices such as completing witness interviews, negotiating a possible plea, or litigating Defendant's conditions of release.

**{22}** We agree that over six months of administrative delays, like the late December docket call and the rescheduling of that docket call to a scheduling

11

conference in January 2015 in response to our Supreme Court's adoption of LR2-400 NMRA (2014) was appropriately weighed against the State. *See* Garza, 2009-NMSC-038, ¶¶ 26, 29 (stating that the administrative delays are weighed against the state and the degree of weight is closely related to the length of the delay). We also agree that over eight months of various delays were appropriately weighed neutrally. These delays consisted of events that were moving the case along "with customary promptness." *State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782; *State v. Gallegos*, 2010-NMCA-032, ¶ 18, 148 N.M. 182, 231 P.3d 1124 (declining to hold a seven month delay caused by the defendant's excusal of the assigned judge against the defendant).

**Assertion of the Right**

{23}     Under the third *Barker* factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "We accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Spearman*, 2012-NMSC-023, ¶ 31 (alteration, internal quotation marks, and citation omitted). "[P]ro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to

12

speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Garza*, 2009-NMSC-038, ¶ 32.

{24} The district court found that Defendant made three pro forma assertions of his right to a speedy trial: the first during his arraignment on October 21, 2013, the second when defense counsel entered his appearance on October 24, 2013, and the third on January 12, 2015. The district court assigned little weight to Defendant's assertions of his right to a speedy trial. It reasoned that while Defendant's initial demands made during his arraignment and at the time of his counsel's entry of appearance were adequate, they were pro forma demands. It further reasoned that the January 12, 2015, demand was made fifteen months after Defendant was indicted, only four days before Defendant filed a motion to dismiss on speedy trial grounds, and two months before his trial setting.

{25} We agree with the district court that Defendant sufficiently asserted his right to a speedy trial, but we hold that such assertions were not forceful or vigorous such that this factor weighs heavily in his favor. *See Garza*, 2009-NMSC-038, ¶ 34 (holding that the defendant's "single demand for a speedy trial, preceding his motion to dismiss, tucked within the waiver of arraignment and not [a] guilty plea, was sufficient to assert his right[,]" but weighs only slightly in the defendant's favor). In evaluating this factor, we are required to assess the timing and manner of Defendant's assertions. *See id.* ¶ 32. Defendant's first two assertions were standard

13

pro forma assertions of his right. His next and final assertion came only four days before Defendant filed his motion to dismiss on speedy trial grounds and two months before his trial setting. Accordingly, we hold that the district court properly concluded that this factor weighs only slightly in the defendant's favor. *See id.* ¶ 34 (noting that where the defendant's assertion of his right was neither vigorous nor mitigated by an acquiescence to the delay, the factor weighed slightly in the defendant's favor).

**Prejudice to Defendant**

{26} Under the fourth and final *Barker* factor, we analyze the prejudice to Defendant. *See Barker*, 407 U.S. at 532. The United States Supreme Court identified three interests of the defendant's that the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration[,] (ii) to minimize anxiety and concern of the accused[,] and (iii) to limit the possibility that the defense will be impaired." *Id.* Our Supreme Court has held that "generally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Garza*, 2009-NMSC-038, ¶ 39. However, in the event that the first two factors (length of delay and reasons for the delay) weigh heavily in the defendant's favor, and the defendant properly asserted his right to a speedy trial, the court may presume the defendant was prejudiced. *See id.* Because

14

the first two factors do not weigh heavily in Defendant's favor, there is no presumption of prejudice in this case.

{27}   Defendant points to the fact that he remained incarcerated for seven months prior to trial until he posted bond. Defendant then claims that he continued to suffer prejudice after his release but does not offer any further explanation. In response, the State argues that there was nothing about Defendant's pretrial incarceration that was undue, and he makes no claim of specific prejudice that resulted from his incarceration. The district court found that Defendant had not carried his burden of demonstrating and substantiating prejudice because he failed to describe how his period of pretrial incarceration personally affected him. The district court further reasoned that Defendant failed to allege that any anxiety he suffered was undue, nor did he allege that his defense had been impaired by the delay.

{28}   Because the parties have centered their arguments around Defendant's seven months of pretrial incarceration, we focus our review on the first interest that the speedy trial right was designed to protect—to prevent oppressive pretrial incarceration. As we previously explained, the first two factors of the *Barker* analysis do not weigh heavily in Defendant's favor, and therefore he was required to make a particularized showing of prejudice. *See Garza*, 2009-NMSC-038, ¶ 38. To this end, Defendant has not pointed us to any evidence in the record that

15

illustrates particularized prejudice he suffered. Defendant instead only provides us with generalized arguments that, based on the guidance we have from *Ochoa*, are insufficient to prove he was prejudiced in any way.

{29} The defendant in *Ochoa* claimed to be prejudiced because he suffered from anxiety as a result of lengthy pretrial incarceration. *Ochoa*, 2017-NMSC-031, ¶¶ 60-61. However, the defendant did not produce affidavits, testimony, or other documentation detailing his specific claims of anxiety. *Id.* ¶ 61. Our Supreme Court declined to speculate as to the particularized anxiety the defendant suffered, "[t]hough it is obvious that [the d]efendant was prejudiced by virtue of his continuous incarceration, absent affirmative proof, we can only speculate as to the specific circumstances of his incarceration." *Id.* ¶ 60. The Court reasoned that a defendant could conceivably suffer oppressive pretrial incarceration in a short or long period of time, but it noted that "[t]hese particulars are unknowable in the absence of affirmative proof." *Id.*

{30} Like the defendant in *Ochoa*, Defendant has not provided any evidence to establish prejudice and has instead relied solely on generalized arguments. Absent evidence, we are simply unable to determine that Defendant suffered particularized prejudice resulting from his seven-month pretrial incarceration and therefore, this factor does not weigh in his favor. *See Spearman*, 2012-NMSC-023, ¶ 39 (stating

16

that it is the defendant's burden to provide evidence of a causal link between the delay and any alleged prejudice as a result of the delay).

**Balancing Test**

{31}    *Barker* instructs us to consider all four factors together along with other relevant circumstances. *Barker*, 407 U.S. at 533. We hold that the five-month delay in this case established presumptive prejudice warranting further analysis into the remaining *Barker* factors. We further hold that the length of delay weighs slightly against the State and that the reasons for the delay weigh only slightly in Defendant's favor. Defendant adequately asserted his right to a speedy trial, but his assertions were pro forma and not vigorous, and therefore, this factor weighs only slightly in Defendant's favor. Finally, we hold that Defendant was unable to establish particularized prejudice under the fourth *Barker* factor. Considering these factors in totality, we conclude that the *Barker* factors support the district court's denial of Defendant's motion to dismiss on speedy trial grounds. We therefore affirm.

**There is Insufficient Evidence to Support Defendant's Conviction for Possession of Burglary Tools**

{32}    Defendant challenges the sufficiency of the evidence underlying his conviction for possession of burglary tools on the grounds that there was no evidence presented at trial from which the jury could determine that the

17

screwdriver he found inside the bait vehicle was possessed with the intent to gain access to the stolen bait vehicle. In response, the State argues that it presented sufficient evidence for the jury to convict Defendant of this charge because Defendant did not have to be convicted of burglary to be convicted of possession of burglary tools, and instead, he simply had to use the screwdriver in the burglary.

{33} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{34} At trial, the jury heard testimony from two Albuquerque Police Department (APD) detectives and also watched a video recording of Defendant stealing the bait vehicle. Detective David Taylor of the APD Property Crimes Unit testified that on September 24, 2013, at approximately 3:10 a.m., he was called out to an auto theft. Detective Taylor explained that APD regularly deploys bait vehicles with bait

18

property inside, and when the vehicle and/or the property is taken, officers get an alert. The bait vehicle that Defendant stole, a 2006 Ford diesel pickup, was made to look like a work truck. It was left open and a screwdriver, among other things, was left inside the vehicle. The vehicle had a malfunctioning ignition switch and jamming a screwdriver into the ignition would start the vehicle. Detective Taylor observed Defendant holding a Leatherman tool, which has a screwdriver in it and an alcoholic beverage in one hand after Defendant first entered the vehicle.

{35}     Section 30-16-5 states: "[p]ossession of burglary tools consists of having in the person's possession a device or instrumentality designed or commonly used for the *commission of burglary* and under circumstances evincing an intent to use the same in the commission of burglary." (Emphasis added.) The jury was instructed as follows:

> 1.     [D]efendant had in his possession a screwdriver, which is designed for or commonly used in the commission of a burglary;
>
> 2.     [D]efendant intended that the screwdriver be used for the purpose of committing a burglary;
>
> 3.     This happened in New Mexico on or about the 24th day of September, 2013.

"Burglary" is defined as "the *unauthorized* entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the *intent* to

19

commit any felony or theft therein." NMSA 1978, § 30-16-3 (1971) (emphasis added). "The crime of burglary is complete when there is an unauthorized entry with the necessary intent; the intent does not have to be carried out after entry." *State v. Ramirez*, 2008-NMCA-165, ¶ 6, 145 N.M. 367, 198 P.3d 866 (internal quotation marks and citation omitted). It is clear that Defendant committed the crime of burglary by his unauthorized entry into the vehicle belonging to APD. *See State v. Jennings*, 1984-NMCA-051, ¶ 14, 102 N.M. 89, 691 P.2d 882 ("An unauthorized presence in a structure is evidence from which a jury could reasonably infer the necessary intent to commit a felony or theft therein."). The question now is whether he intended to use the screwdriver in the commission of the burglary.

{36}     Defendant relies on *Jennings* and *State v. Barragan*, 2001-NMCA-086, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110, in support of his arguments. In *Jennings*, there was sufficient evidence from which a jury could infer that the defendant, who had a screwdriver in his possession, intended to break into a gas station and commit a theft therein where there were two doors that were locked, the lock mechanism on one of the doors had what appeared to be fresh screwdriver marks and the padlock on the other door had been forced off. *Jennings*, 1984-NMCA-051, ¶¶ 4-5. In *Barragan*, there were two unauthorized entries by the defendant. The first

20

unauthorized entry was through an air conditioning vent, without the use of any tools to facilitate the entry. 2001-NMCA-086, ¶ 2. The second unauthorized entry occurred when the defendant used a tool to pry open an office door and once inside, committed a larceny. *Id.* ¶¶ 2, 27. The defendant challenged the sufficiency of the evidence with a focus on the first entry. In response, the state argued that for purposes of the possession statute, burglary is a continuing offense. *Id.* ¶ 23. Concluding that it was unnecessary to consider whether the burglary was ongoing, this Court determined there was sufficient evidence "to support a finding that [the d]efendant intended to use [a] pry device to make an unauthorized entry [into the office] with the intent to commit a felony therein." *Id.* ¶ 27. Defendant's reliance on both *Jennings* and *Barragan* confirms the requirement that the use of a burglary tool in committing a burglary—gaining unauthorized entry—is a necessary element to prove the crime of possession of burglary tools.

{37} Contrary to the State's argument, *State v. Hernandez*, 1993-NMCA-132, 116 N.M. 562, 865 P.2d 1206 is neither factually similar or dispositive. In *Hernandez*, the defendant purchased a screwdriver at a nearby store, opened the vehicle's unlocked door and then tried to start it with the purchased screwdriver. *Id.* ¶ 2. However, the defendant testified that he purchased the screwdriver with the intent to use it to make an unauthorized entry into the vehicle, which we concluded was

21

sufficient to support a finding that the defendant possessed burglary tools. *Id*. ¶¶ 2, 8.

{38}     Here, Defendant was charged with possession of burglary tools for the screwdriver located inside the car, not the Leatherman he had in his hand when he first entered the vehicle. Thus, Defendant's unauthorized entry into the bait vehicle, with the intent to steal it was complete before he ever had access to the screwdriver. Because there was no evidence that Defendant had access to the screwdriver before he entered the vehicle or that he had any intent to use a screwdriver to make an unauthorized entry, we conclude that there is insufficient evidence to support Defendant's conviction for possession of burglary tools, the screwdriver located in the vehicle. *See State v. Office of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 62, 285 P.3d 622 (noting that "the completed crime of burglary is but a step taken toward another crime").

**Admission of Redacted Copy of Bait Vehicle Title**

{39}     Defendant's final challenge on appeal is that the district court erroneously admitted a redacted copy of the bait vehicle's title. Defendant argues that without the original title, the State could not prove that the redacted title belonged to the bait vehicle. Defendant further argues that the State was also required to explain why the original title to the bait vehicle was unavailable. "We review the admission of evidence under an abuse of discretion standard and will not reverse in

22

the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

{40} Detective Kenneth Miller of the APD Automobile Theft Unit testified that he builds and maintains all of the bait vehicles for the APD bait vehicle program. Over Defendant's objection, the State introduced a copy of the title for the bait vehicle during Detective Miller's testimony. Detective Miller testified that he was responsible for redacting certain identification information from the title in order to maintain the confidentiality and integrity of the program. He also testified that the last eight characters of the vehicle identification number on a title could be linked back to the exact vehicle. He was "100 percent certain" that the redacted title belonged to the bait vehicle, because he had first-hand knowledge of the original title, its redactions, and he was the one who provided the redacted title to the State.

{41} New Mexico's best evidence rule provides "[a]n original writing . . . is required in order to prove its content unless these rules or a statute provides otherwise." Rule 11-1002 NMRA. This Court has recognized that one of the purposes of the rule is to protect "against the fraudulent or negligent omissions and inaccuracies that inhere in subsequently made . . . copies." *State v. Hanson*, 2015-NMCA-057, ¶ 8, 348 P.3d 1070. Rule 11-1003 NMRA provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the

23

duplicate." It is the State's burden to prove why the original title was not produced at trial. *State v. Lopez*, 2009-NMCA-044, ¶ 14, 146 N.M. 98, 206 P.3d 1003.

{42} In this case, the redacted title was entered in conjunction with extrinsic evidence, which the State presented by way of Detective Miller's testimony that explained why the original title was not available—preserving the integrity and maintaining the confidentiality of the bait vehicle program, as well as his personal knowledge that the redacted title belonged to the bait vehicle. *See id.* ¶¶ 13-14 (holding that the best evidence rule was violated where the state presented testimony regarding the contents of the documents but did not explain the availability of the original documents or why those documents were not entered into evidence). The district court did not abuse its discretion when it admitted the redacted bait vehicle title, pursuant to the rules of evidence.

**CONCLUSION**

{43} We reverse Defendant's conviction for possession of burglary tools and affirm on all other grounds.

{44} **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

24

_____

**LINDA M. VANZI, Chief Judge**


_____

**JULIE J. VARGAS, Judge**